ANNIE JESSUP ET AL., DEFENDANTS IN ERROR, v. THE BAMFORD BROTHERS SILK MANUFACTURING COMPANY, PLAINTIFF IN ERROR.

Argued June 28, 1901—Decided November 15, 1901.

The diversion or altered transmission of surface water, caused by the erection of a building upon land over which it is accustomed to flow, affords no ground of action to a person who suffers injury by reason thereof.

On error to the Passaic Circuit Court.

For the plaintiff in error, *John B. Humphreys.*

For the defendants in error, *Zebulon M. Ward.*

The opinion of the court was delivered by

GUMMERE, J.  The plaintiff in error is the owner of a lot of land fronting on Rip Van Winkle avenue in the city of Paterson.  The lot is located upon the side of a hill, sloping sharply down from its rear line to the avenue.  Upon the lot the plaintiff in error has constructed several buildings, one of which is styled a dye-house.  This latter building is erected upon the street line and extends about one hundred and fifty feet back toward the rear of the lot.  Owing to the lay of the land the rear of the building is necessarily upon a higher plane than the front, and, in order to have the floor level, it was necessary to build up the front of the lot to the same plane as that portion thereof upon which the rear of the building rested.  This was done by erecting a retaining wall upon the street line and filling in the land behind the wall with material, upon which a solid cement floor was laid. The front of the dye-house rested upon the top of this retaining wall.  In order that the wall should not permanently hold back upon the lot of the defendant the surface water which from time to time flowed down upon them, openings called "weep-holes" were left, at different places along the base of the wall, to allow its escape.  At one of these weep-holes a six-inch drain pipe was inserted, the apparent purpose of which was to enable the surface water to flow more readily through the aperture.

On January 1st, 1900, the plaintiff Annie Jessup, while passing along upon the sidewalk on Rip Van Winkle avenue, in front of the premises of the defendant, slipped and fell, breaking her arm.  Her fall was due to the presence of ice upon the sidewalk, which, however, was not apparent to her, it being concealed by a light fall of snow.  This ice lay just in front of the drain pipe opening which has been mentioned, and had formed from the water which discharged through that pipe.  The trial judge instructed the jury that "no per-

son had a right to gather together the water on his own property and throw it upon the sidewalk in a stream, and, if he does so, and thereby renders the street more dangerous, or less convenient than otherwise it would be for public travel, then he is responsible for injuries caused thereby." He then told them that if they were satisfied that what the defendant did do increased the danger, and made the street less convenient for public travel, and through that the plaintiff met with her accident, then the defendant is to be held responsible, and should make compensation to Mrs. Jessup and her husband for the loss which they had sustained by reason of the accident. To this instruction there was an exception by the plaintiff in error.

We think the rule of law laid down by the trial justice was inaccurate, so far as its application to surface water is concerned. In the case of *Bowlsby* v. *Speer,* 2 *Vroom* 351, the defendant built a stable upon his property, situate on a hillside, the effect of which was to divert the flow of the surface water from its natural course and throw it upon the land of the plaintiff, where it had not previously flowed. The plaintiff sued to recover the damage suffered from the discharge of this water upon his property. It was held by the Supreme Court that, notwithstanding the plaintiff had suffered from the act of the defendant, it was *damnum absque injuria,* the court declaring that, as a general proposition, "neither the retention, diversion, repulsion or altered transmission of surface water is an actionable injury, even though damage ensues," and adding, by way of demonstration of the soundness of the principle laid down, "if the right to run in its natural channels was annexed to surface waters as a legal incident, the difficulties would be infinite indeed; unless the land should be left idle, it would be impossible to enforce the right in its rigor, for it is obvious every house that is built and every furrow that is made in a field is a disturbance of such right. If such a doctrine prevailed every acclivity would be and remain a watershed and most low ground become reservoirs."

The same question again came before the Supreme Court

in the case of *Town of Union* ads. *Durkes,* 9 *Vroom* 21, and the doctrine of Bowlsby *v.* Speer was affirmed in the later decision, Chief Justice Beasley saying that Lord Tenterden had forcibly expressed the legal idea when he declared that "surface water was the common enemy, which every proprietor may fight and get rid of as best he may."

Afterward, in the case of *West Orange* v. *Field,* 10 *Stew. Eq.* 600, the question of how extensive the right to divert the flow of surface water was came before this court for its consideration, and the cases above cited were referred to, with approval, by Mr. Justice Van Syckel in delivering the opinion. In that case the municipality was about to put into effect a scheme to collect the surface water over a large district, carry it away by means of artificial ducts, or sewers, from where it would otherwise be discharged and pour it, in mass, upon the lands of an individual owner. It was held by this court that, although the principle established by the earlier decisions would warrant the diversion of the flow of surface water by the public authorities, so far as that diversion was merely incidental to, and occasioned by, the making or alteration of street grades, it was not so broad as to justify the municipality in carrying into effect its proposed scheme, the court saying that if the doctrine was as broad as was claimed by the municipality, there would be nothing to prevent it from constructing sewers by which the concentrated surface water of the entire town would be cast upon the premises of any proprietor that might arbitrarily be selected to bear the burden.

The distinction pointed out in the West Orange case is obvious; the inapplicability of the principle underlying its decision to the case under consideration is equally apparent.

Perhaps the leading case upon the subject of the diversion of surface water is that of *Gannon* v. *Hargadon,* 10 *Allen* 106, where the rule is thus stated: "The right of an owner of land to occupy and improve it in such manner and for such purpose as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated, with reference to that of adjoining owners, that an

alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing on to it from the surface of adjacent lots, either to stand in unusual quantities on other adjacent lots or to pass into or over the same in greater quantities or in other directions than they were accustomed to flow; * * * that the right of a party to the free and unfettered control of his own land cannot be interfered with or restrained by any consideration of injury to others which may be occasioned by the flow of mere surface water, in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment. Nor is it at all material, in the application of this principle of law, whether a party obstructs or changes the direction and flow of surface water by preventing it from coming within the limits of his land, or by erecting barriers, or changing the level of the soil, so as to turn it off in a new course after it has come within his boundaries. The obstruction of surface water, or an alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil."

The same rule prevails (although not always laid down so broadly as in Gannon *v.* Hargadon) in New York, Maine, Connecticut, Indiana, Kansas, Minnesota, Wisconsin and Missouri. *Barkley* v. *Wilcox,* 86 *N. Y.* 140; *Morrison* v. *Railroad Co.,* 67 *Me.* 353; *Grant* v. *Allen,* 41 *Conn.* 156; *Taylor* v. *Fickas,* 64 *Ind.* 167; *Gibbs* v. *Williams,* 25 *Kan.* 214; *Rowe* v. *Railroad Co.,* 41 *Minn.* 384; *Hoyt* v. *City of Hudson,* 27 *Wis.* 656; *Abbott* v. *Railroad Co.,* 83 *Mo.* 271.

We think the doctrine laid down in Bowlsby *v.* Speer and Town of Union *v.* Durkes, as elaborated in Gannon *v.* Hargadon, is the correct one. Its application to the facts of the present case requires a reversal of the judgment under review. The surface water flowing down the hill and over the land of the defendant would, if that land had been left in an unimproved state, have naturally flowed upon and over the sidewalk of Rip Van Winkle avenue. The erection of the

dye-house and retaining wall by the defendant did not have the effect of increasing, in any degree, the flow of the surface water, or of causing it to be discharged in any greater quantity upon the sidewalk. It merely concentrated the flow in certain places upon it. This concentration was a necessary incident of the legitimate beneficial user of its property by the defendant, and any injury arising therefrom is not actionable.

The judgment below is reversed.

MAGIE, CHANCELLOR (dissenting). I am unable to agree with the opinion delivered for the majority of the court.

The rule respecting surface water and its discharge, as between the owners of adjoining lands, which is in force in New Jersey, I understand to be this, viz., that an owner of lands may retain upon his lands the surface water which comes thereon; he may repel or divert the surface water which would otherwise come upon his land from the land of an adjoining owner, or he may alter the course of transmission of such surface water, without liability to the owner of the adjoining land, provided that in so doing he does not collect such surface water and discharge it in a collected flow in unusual quantities or upon an unusual place on the adjoining land. If he does so, and the collected discharge produces injury, he is liable to the adjoining owner for such injury. *Washb. Easem.* 4601; *Bowlsby* v. *Speer,* 2 *Vroom* 351; *Kelly* v. *Dunning,* 12 *Stew. Eq.* 482.

A similar rule, in my judgment, applies as between the owner of lands adjoining a highway and the public having the use of such highway. Their duties in respect to the surface water falling on the adjoining land and the surface water falling on the highway are substantially alike, and as between such owner and the public there is a reciprocal liability for injury done by violation of the rule. *Phillips* v. *Waterhouse,* 69 *Iowa* 199. So our courts have uniformly held that while a municipality may change the grade of a highway, and will not be liable for an injury to the owner of adjoining land by water cast thereon as the mere incident of the grade, yet that

the municipality cannot collect waters not naturally thus discharged and concentrate and discharge them upon such adjoining property without liability for such injury. *Town of Union* ads. *Durkes,* 9 *Vroom* 21; *Field* v. *West Orange,* 9 *Stew. Eq.* 118; *S. C.,* 10 *Id.* 600; *S. C.,* 1 *Dick. Ch. Rep.* 183; *Miller* v. *Morristown,* 2 *Id.* 62; *S. C.,* 3 *Id.* 645; *Soule* v. *Passaic,* 2 *Id.* 28.

In the case before us the land of the defendant naturally discharged the surface water that fell thereon upon a highway. If the water thus discharged had run upon the sidewalk of the highway and had frozen thereon, and a person passing had slipped on the ice so formed and been injured, the adjoining owner would have been under no liability for the injury thus received. But the proofs showed that the owner had erected a building upon his land in such a position as to intercept the surface water. If the wall of the building had been solid and continuous, it would have prevented the surface water from reaching the highway. But the owner placed openings in the wall called "weep-holes," in one of which a pipe was inserted for the obvious purpose of discharging the surface water which otherwise would have been banked up by the wall and injurious to its stability. The evidence in the case justified the inference that the water discharged through that pipe froze upon the sidewalk, and by continuous freezing produced an irregular surface of ice lifted above the level of the sidewalk, and that the plaintiff, in walking upon the sidewalk, slipped upon the icy mound thus formed, when it was concealed by a light fall of snow, and fell and suffered serious injury.

If the surface water dammed back by the wall erected by defendant and discharged through the pipe in question had been so discharged in sufficient volume to wash away the sidewalk and gully the street, a public nuisance would have been thereby created, for which the owner would have been liable to the public and to any individual who, without negligence on his part, was injured in passing upon the highway.

I think the same principle applies where the water discharged, though not of sufficient volume to disturb the sur-

face of the street, yet, in freezing weather, deposits ice thereon, which presents an obstacle and danger to the free and safe passage of persons using the highway, and that a like liability will be incurred by the adjoining owner to the public or any person who, without negligence, was injured thereby.

In my judgment it was, therefore, proper for the trial judge to submit to the jury the question whether, by the mode in which defendant erected its wall and discharged the surface water, it has increased the danger of travel and made the street less convenient for the public, and that if they found that, by reason of defendant's acts in that regard, the highway was made dangerous, and that the plaintiff was injured thereby, there was a liability on the part of the defendant to compensate her for such damages as the jury deemed had been sustained by her. The case was, in my judgment, properly submitted to the jury, and I feel obliged to vote to affirm the judgment.

I am authorized to state that Chief Justice Depue, Mr. Justice Garretson, Judge Bogert and Judge Adams concur in this view.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRETSON, BOGERT, ADAMS.   5.

*For reversal*—VAN SYCKEL, GARRISON, GUMMERE, HENDRICKSON, VREDENBURGH, VOORHEES, VROOM.   7.