*1 Robbins.*  Sullivan *v.* Browning.

MARY F. SULLIVAN

*v.*

FREDERICK T. BROWNING et al.

[Filed May 26th, 1904.]

1. Though ordinarily an allegation in a bill that a roadway is a private right of way, and not a public street, would be deemed an allegation of fact and admitted by a demurrer, yet where a bill alleges facts which show that the roadway is a public highway subjected to a public easement of travel, an averment that it is not a public highway may be taken as a mere statement of an erroneous legal conclusion not admitted by demurrer.

2. The construction by a landowner of structures causing the surface water to flow onto adjoining land, whereby the total volume of surface water flowing over such land is so increased as to cause damage, gives the owner of such land no right of action.

3. Under the facts—*Held*, that the complainant's case rested upon an alleged legal right which has never been recognized in New Jersey, and which would be an exception to a well-settled rule of law, and that therefore the complainant must establish her doubtful legal right at law before the same can be enforced by an injunction in this court.

On demurrer.

*Messrs. Howe & Davis,* for the demurrants.

*Mr. W. Bradford Smith,* for the complainant.

STEVENSON, V. C.

The bill alleges that the complainant owns a tract of land in the town of West Orange, "extending from the easterly side of Glen avenue, in Llewellyn Park, in an easterly direction to the westerly line of Eagle Rock road," and in 1898

"laid out a street or road over and across her said lands extending the entire length thereof from Glen avenue to said Eagle Rock road, and caused the same to be worked and graded and a map to be made of said

lands showing said street or road, whereon building lots were delineated fronting upon said street or road, which said street or road was designated upon said map and has since been known as Llewellyn avenue; and that since the making of said map the complainant has sold to various persons as many as twenty-two building lots upon either side of said Llewllyn avenue, having a frontage of twenty-five feet or more each upon said avenue, upon which lots a number of the owners thereof have constructed as many as sixteen dwelling-houses."

The length of Llewellyn avenue, from Glen avenue to said Eagle Rock road, is about one thousand four hundred feet. All of the lands fronting upon the northerly side of Llewellyn avenue are owned by the complainant and her grantees. The lands upon the southerly side of Llewellyn avenue, for a distance of five hundred and sixty feet from Eagle Rock road, are also owned by the complainant and her grantees, and the rest of the frontage on the southerly side of Llewellyn avenue, about eight hundred and fifty feet in length, is owned by the three defendants, devisees of Ross C. Browning, deceased, and was never owned by the complainant. The complainant is still the owner of large portions of the lands on each side of Llewellyn avenue.

The land over which Llewellyn avenue is laid is about ninety-two feet lower at Eagle Rock road than at Glen avenue, and the steepest grade is on the westerly portion, in front of the land of the defendants Browning. The general slope of the lands lying between Glen avenue and Eagle Rock road, through which Llewellyn avenue is laid out, and of the lands southerly therefrom, is in a southeasterly direction. The surface water from lands immediately south of Llewellyn avenue and from lands west of Glen avenue, if undiverted, flows in a southeasterly direction, and reaches Eagle Rock road or its continuation several hundred feet south of Llewellyn avenue. The complainant has resided upon her lands for more than thirty years last past, and during all that period the surface water has followed the natural slope of the land in a southeasterly direction, over the land of the Brownings and away from the lands of the complainant. Since Llewellyn avenue was laid out it has not been until recently, and from the slope of the lands cannot be naturally, subject to the flow of surface water from the lands of the defendants.

The said Ross C. Browning, now deceased, in or about 1896, conveyed to the defendant Thomas N. Foster a parcel of land fronting upon the easterly side of Glen avenue, the northerly line of which parcel "is about two hundred and eighty-four feet in length, and runs parallel, or nearly so, with the southerly line of Llewellyn avenue, and about fifty feet southerly therefrom." Ross C. Browning and Foster made an agreement, November 26th, 1896, to the effect that the strip of land belonging to Ross C. Browning north of the parcel conveyed to Foster "was to be used for a roadway to lands to the east thereof," or if not used for such purpose should be offered to said Foster for purchase. This agreement was recorded in the Essex county register's office. It will not be necessary to set forth in detail the relations between the defendants, the three Brownings and the defendant Foster, inasmuch as the case will be disposed of without reference to the above-mentioned agreement, and in the same way as if the Brownings owned the entire Foster tract.

The injury complained of consists in the construction by the defendants on their land of "bunkers," which are described as "artificially constructed mounds of earth raised above the elevation of the surrounding land at a sufficient height to divert the flow of surface water." These bunkers run in a direction so that if continued to said Llewellyn avenue they would strike the same at an angle of about forty-five degrees, so that the water intercepted by them is turned from its natural flow, in a southeasterly direction, over lands of the said Browning and of said Foster, and is diverted in a northeasterly direction, towards and upon said Llewellyn avenue.

There are four of these bunkers located on the land of the defendants, which have the effect to divert the surface water, as above stated, and cause it to flow into Llewellyn avenue. The damage complained of arises wholly from the increase in the flowage of water in and along Llewellyn avenue in times of rain. While before the construction of these bunkers the "flow of surface water down said Llewellyn avenue was never, in the times of heaviest rains, or at any other time, sufficient to wash out or injure the surface of Llewellyn avenue, or the gutters

or walks thereof, or the property" of the complainant fronting on Llewellyn avenue, since the construction of the bunkers "vast and unusual quantities of surface water diverted by said bunkers flow down the said Llewellyn avenue and undermine and wash away and injure Llewellyn avenue and the gutters and walks thereof, and wash over and injure the property" of the complainant "fronting thereon."

The bill alleges that "said Llewellyn avenue is not a public street and has not been acquired by the said town of West Orange, and the title to the land within the lines of said avenue is vested" in the complainant and her grantees to the centre line of the avenue, subject to the easement of the complainant and her grantees "to use the same as a street for ingress and egress," and that no person except the complainant and her grantees "has any right, interest, easement or control in or over the lands in said avenue."

1. I think it is a serious question whether, upon this demurrer, Llewellyn avenue must not be considered as a public highway, unaccepted by the public authorities but subjected to the public easement of travel. The facts are abundantly stated at the commencement of the bill of complaint, from which the legal inference must be drawn that Llewellyn avenue is a public street in the sense above stated. Subsequently the bill alleges that Llewellyn avenue is not a public street, and has not been acquired by the town of West Orange. No explanation is offered of the facts first set forth, which fix the character of this avenue as a public highway. In my opinion, there are strong grounds for holding that, taking this bill as a whole, the allegation that Llewellyn avenue is not a public street must be deemed a mere statement of a legal conclusion and an erroneous conclusion based upon the idea that before the street could be subjected to the public easement it must in some way have been "acquired by the said town of West Orange." Ordinarily, an allegation in the bill of complaint that a roadway was merely a private right of way and not a public street, would be deemed an allegation of fact, and would be admitted to be true by a demurrer, but when a bill alleges facts which show that the roadway is a public

highway in the sense of being subjected to the public easement of travel, a bald averment that the roadway is not a public highway may well be taken as a mere statement of an erroneous legal conclusion, and, therefore, is not under the old rule of equity pleading admitted to be true by a demurrer.

2. The bill does not show that the operations of the defendants on their own land have the effect to divert into Llewellyn avenue any waters which do not naturally fall or collect on the defendants' land. · It is true that the defendants have constructed "a brick and stone culvert upon the easterly side of Glen avenue, a few feet south of said Llewellyn avenue, connected with said culvert being a four-inch drain pipe through which to discharge the water from said culvert," but it does not appear, nor can it properly, on this argument, be inferred that the culvert is employed to transmit the surface water from lands lying westerly of the land of the defendants Browning. If it might be inferred that this culvert probably extends under and through Glen avenue, so as to collect and lead water from the westerly side of Glen avenue onto the lands of the defendants, from which land it is then diverted by the bunkers into Llewellyn avenue, certain questions would be presented for discussion which now need not be considered. I have no right, in the consideration of this case, to assume that any surface water is diverted into Llewellyn avenue by the defendants which does not naturally fall upon or flow into the defendants' land.

3. No claim is made that the defendants use their land as a reservoir to collect a large quantity of surface water which they subsequently discharge in a body or in unreasonable amounts upon the land of the complainant. It is the surface water as it falls and as it flows which the defendants are charged with diverting.

4. No damage is complained of resulting from the immediate discharge of surface water upon and against the complainant's land. It is not pretended that these bunkers condense the surface water which otherwise would flow in a wide .sheet into a narrow channel and thus cause the same to be spouted into the

land of the complainant so as to wash away the gutters and walks of Llewellyn avenue.

For all that appears in this bill precisely the same damage of which the bill complains would be caused if instead of maintaining these bunkers the defendants should fill in their land and grade it toward Llewellyn avenue and thereby cause the entire surface water naturally falling upon or flowing into it to drain off into Llewellyn avenue; in such a case apparently the increased flowage in the gutters of Llewellyn avenue of which the complainant complains would produce the very damage described in the bill.

5. Taking the case as favorably for the complainant as it is possible to do upon this demurrer, even allowing that Llewellyn avenue must be deemed not to be a public street, I think the grievance of the complainant is shown to be a clear case of *damnum absque injuria.*

The damage complained of is alleged to be caused by a diversion of surface water effected by the defendants on their own land, by which such water which formerly ran off in one direction is made to run off in another. It is unnecessary to discuss the large number of cases dealing with the right of the occupier of land to get rid of surface water *hostis communis* as best as he can. The decisions are somewhat conflicting. No doubt the more recent decisions have tended to qualify the broader definitions of the earlier cases of the right of the landowner to deal with surface water in any way he may see fit to adopt. Probably in the future further modifications of this right may be established. But in this case, in my judgment, there are no facts presented which bring it within any recognized exception to the well-settled general rule.

In *Jessup* v. *Bamford Brothers' Co., 66 N. J. Law (37 Vr.) 641,* Chief-Justice Gummere quotes with approval the definition of the right of the landowner to deal with surface water laid down in the leading case of *Gannon* v. *Hargadon, 10 Allen 106.* Part of this definition is as follows: "Nor is it at all material  *  *  *  whether a party obstructs or changes the direction and flow of surface water by preventing it from com-

ing within the limits of his land or by erecting barriers, or changing the level of the soil so as to turn it off in a new course after it has come within his boundaries."

The present case, in my opinion, comes directly within the principles laid down in *Jessup* v. *Bamford Brothers' Co.* and the other decisions cited in the majority opinion of the court of errors and appeals in that case, nor can I find anything in the dissenting opinion filed by the chancellor, in which four other members of the court concurred, which in any way tends to help out the complainant in this case. This dissenting opinion is based upon a view of the facts which under no possibility could be entertained in regard to the facts of this case. The opinion points out that the occupier of land cannot "*collect* the surface water and discharge it in a collected flow in unusual quantities or upon an unusual place on the adjoining land;" it further sets forth, as facts proved in the case, that the building of the defendant was so constructed as to dam up the surface water and discharge it through a small opening in the wall over the sidewalk so as to cause in winter a dangerous accumulation of ice as a natural result. The plaintiff in the case sued for damages caused by this dangerous condition of the highway. The learned chancellor states that the case is governed by the same principle which would be applicable if the defendants had dammed up the surface water by their wall and then discharged the same through a pipe "in sufficient volume to wash away the sidewalk and gully the street" and thereby create a public nuisance. As I have already pointed out in this present case, there is not the slightest pretence that the damage to the complainant's property, either in Llewellyn avenue or along its border, is caused *directly* by the discharge of surface water from the complainant's land. The complainant's damage is caused by the fact that the defendants' operations on their land have made the total volume of surface water flowing down Llewellyn avenue in times of rain greater than it formerly was. It is the combined surface water, including both what the defendants have diverted into this street and what naturally flows into the street from other lands, which causes the damage complained of.

6. If there is any error in holding that the law of New Jersey, as it is settled to-day, fully justifies the defendants in dealing with the surface water on their property in the manner complained of in the complainant's bill, it seems to me to be entirely safe to fall back upon the conclusion that at any rate the complainant's right is not clear, so clear as to justify this court in granting an injunction. The leading cases on this subject are collected in *Slew. Dig. 620 § 13 et seq.* and supplement, *p. 350 § 6 et seq.*

No doubt in these days caution should be observed not to extend the principle laid down and illustrated in the cases above referred to. Where a complainant has a right to equitable remedies, if his legal rights have been invaded, the more modern view is that he ought not to be turned out of a court of equity and compelled to resort first to a court of law for the establishment of his legal rights and then invited back into the court of equity in order to obtain the only remedies which are valuable and effectual in his case.

It is the duty of this court, however, to apply the perfectly well-settled principles of the remedial system which is established in this state without regard to what may or may not be done in other jurisdictions. The complainant practically complains of a nuisance resulting from certain operations of the defendants on their own land, affecting the flowage of surface water. Upon any possible view of the facts presented by the bill it seems to me that the complainant is asserting a legal right which has never been recognized in this state, or so far as appears from the researches of counsel, indicated by their briefs, in any American or English decisions. This alleged legal right, moreover, if it is ever recognized in this state, must be recognized as an exception to a well-settled general rule. Plainly, the complainant, under our present judicial system, must first establish her alleged legal right in a court of law before it can be enforced by an injunction in this court.

The demurrer will be sustained.