As I gather my trial notations and reassemble my thoughts concerning this case to formulate a just decision, a little *Page 500 
group of abstractions seems to dart across the field of view. I am reminded that while trivialities probably occupy a large part of every human life, yet to what degree a mere trifle may serve to aggrieve a highly sensitive person is unimaginable. To some, a vagrant hair by its recurrent irritations may agitate more annoyance than an ungentle punch. It must be acknowledged that relatively nothing can in some environments cause much ado.
The adverse parties in the present cause are neighbors, but only in the sense that they are owners of contiguous residential properties situate on Hoffman Avenue in the City of Trenton. In other respects their relations are not apparently in consonance with the biblical exhortation. Leviticus 19-18.
Certain physical conditions, reciprocal in character, existing at the division line in the rear of their premises are the taproots from which this full-grown controversy has acquired its nourishment. It is not unreasonable to conjecture that those conditions, so baneful and pernicious in the estimation of the complainant, might have been entirely eliminated not only in less time than has been devoted to the composition of the pleadings in this suit but probably at less expense.
The Latin phrase "de minimis non curat lex" is expressive of a pragmatical court policy, but it is the traditional propensity of a court of equity to dispense some just and feasible remedy where a right exists. This complainant has preferred to have his day in court.
The proofs disclose that the location of the division line between the lots is not in dispute. First the complainant and then the defendants erected upon the rear of their respective lots a one-story, one-car, cement block garage. The complainant resolved to erect the easterly wall of his structure about 6/100 of a foot from the division line. The defendants constructed the westerly wall of their somewhat more stable tenement about 1/10 of a foot from the line. The walls of each garage as originally erected did not transgress the division line. However, in conformity with modern practice each placed a so-called capstone upon the top of his wall. The capstone upon the defendants' wall is approximately eighteen inches above a like capstone covering the adjacent *Page 501 
wall of the complainant's construction. These capstones are about twelve inches in width and have a convex spherical surface. They are about thirty inches in length by twelve inches in width and are designed to overlap at their extremities as they extend along the top of the narrow wall. The body of the capstone is known in the trade as the "barrel," the point of ingraft is described as the "bell."
Well, what has happened? The complainant has hypothesized that it not only rains but it frequently pours, and that the rain falling upon that six-inch side of the defendants' elevated capstone which slopes toward his property undoubtedly discharges its rainfall upon the capstone of the complainant beneath, where by reason of the counter incline of his own capstone some of it is directed against the defendants' wall, from which some quantity in reasonable probability rebounds against the complainant's wall, thus rendering the latter objectionably moist and damp. Let me pause to divulge that it is not intimated that any of the rain descending upon the roof of either garage is discharged upon the adjacent property. It is therefore the rain water that drains sequaciously in obedience to the law of gravitation from the six-inch reverse sides of the upper and nether capstones that comprises the nucleus of the existing discord between the parties. Naturally, the bill of the complainant confronts the counter-claim of the defendants.
If it were not for the existence of certain additional features of slightly more significance to which I shall presently refer, I would unhesitatingly apply our rule of law relative to the subject of surface waters and dismiss this proceeding. Under the common law, as accepted by our courts, surface water is regarded as a common enemy which every proprietor is privileged to resist to the best of his ability, provided he does not alter, by artificial means, the natural discharge of the surface water from his land on that of his neighbor, by conducting it into new channels in unusual quantities to or on a particular part or parts of the latter's land, to its injury. Bowlsby v. Speer,31 N.J. Law 351: Jessup v. Bamford, c., 66 N.J. Law 641;51 Atl. Rep. 147; Lightcap v. Lehigh Valley Railroad Co.,90 N.J. Law 620; 101 Atl. Rep. 187; *Page 502 Sullivan v. Browning, 67 N.J. Eq. 391; 58 Atl. Rep. 302;Lulevitch v. Roberts, 98 N.J. Eq. 373; 129 Atl. Rep. 616;Fitz-Patrick v. Gourley, 104 N.J. Eq. 281; 145 Atl. Rep. 337;Zamelli v. Trost, 132 N.J. Law 388; 40 Atl. Rep. 2d 783;
affirmed, 133 N.J. Law 465; 44 Atl. Rep. 2d 909.
This court has held that the rule embraces waters derived from falling rain and melting snow, whether on the ground or on the roofs of buildings thereon. Nathanson v. Wagner, 118 N.J. Eq. 390; 179 Atl. Rep. 466. Cf. Bringhurst v. O'Donnell (Del.),124 Atl. Rep. 795 797; Shea v. Gavitt (Conn.),94 Atl. Rep. 360; 40 Words and Phrases 842 et seq.
In addition, however, the pleadings allege that mutatismutandis each capstone overreaches the property line, and the proofs sustain the verity of both contentions. Ignoring microscopic deviations, two or three of the small bells of the capstone of the defendants override the line about 6/100 of a foot, while the capstone bell at the rear of the complainant's wall now leans against the wall of the defendants' garage. In that regard this is a cause in which the equitable as well as the inequitable elements are essentially in balance. However, each side seeks by the pleadings a mandatory measure of relief from the encroachments of the other.
The injuries reciprocally suffered by the parties, however distressing to their hostile temperaments, are easily tolerable, but I cannot be inattentive to their asserted rights to have their respective properties liberated from unlawful encumbrances. Here neither the titles to the adjacent properties nor the location of the dividing line is in dispute. Cf. Imperial RealtyCo. v. West Jersey and Seashore Railroad Co., 79 N.J. Eq. 168;81 Atl. Rep. 837; Man v. Vockroth, 94 N.J. Eq. 511;121 Atl. Rep. 599.
The jurisdiction of this court to enjoin a continuous trespass where the injury is irreparable is beyond a shadow of doubt.Southmayd v. McLaughlin, 24 N.J. Eq. 181; Morris and EssexRailroad Co. v. Hudson Tunnel Railroad Co., 25 N.J. Eq. 384;Hirschberg v. Flusser, 87 N.J. Eq. 588; 101 Atl. Rep. 191. It has been resolved that the existence of an encroachment constitutes an irreparable injury. Krich *Page 503 
v. Zemel, 96 N.J. Eq. 208; 124 Atl. Rep. 449; Capone v.Ranzulli, 99 N.J. Eq. 627; 134 Atl. Rep. 533.
The remedy at law to resist the invasion of property rights by means of encroachments is inadequate. Hirschberg v. Flusser,supra. In appropriate suits in this tribunal, the court does not consider the inconvenience or damage which may result to the offending party. Supplee v. Cohen, 80 N.J. Eq. 83;83 Atl. Rep. 373; affirmed, 81 N.J. Eq. 500; 86 Atl. Rep. 366. Upon final hearing equity courts enjoin according to the rights of the parties. Cutrona v. Columbus Theatre, 107 N.J. Eq. 281;151 Atl. Rep. 467; Rayhertz, c., Corp. v. Fulton, c., Co.,124 N.J. Eq. 121; 200 Atl. Rep. 557; Tribune Association v.Simonds, 104 Atl. Rep. 386.
In response to the prayers of the parties, I feel obliged to advise a mandatory decree directing the complainant and the defendants to remove the encroachments for which they are respectively responsible within a time to be therein specified, and in all other respects the bill and counter-claim will be dismissed. Costs and counsel fees will not be allowed in favor of either party.