62 N.J. Super. 224 (1960)
162 A.2d 582
PAUL GELLENTHIN, PLAINTIFF-APPELLANT,
v.
J. & D., INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1959.
Decided July 1, 1960.
*225 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Lewis M. Holland argued the cause for plaintiff-appellant (Messrs. Warren, Chasan & Leyner, attorneys; Mr. Joel A. Leyner and Mr. Lewis M. Holland, on the brief).
Mr. Joseph N. Marotta, Jr., argued the cause for defendant-respondent (Messrs. Basile & Delchop, attorneys; Mr. Joseph N. Marotta, Jr., of counsel and on the brief).
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiff appeals from a judgment in the Superior Court, Law Division, based on the court's action in granting defendant's motion for dismissal at the end of plaintiff's case. R.R. 4:42-2(b).
Plaintiff was injured when he slipped and fell on ice on a public sidewalk. He alleged that his fall and resultant injuries were caused by defendant's negligence. The accident occurred on Oakdene Avenue in Cliffside Park on the *226 evening of December 5, 1957. In the area of the accident Oakdene Avenue is a steep hill, sloping downward from its intersection with Anderson Avenue to its intersection with Gorge Road. Plaintiff resided on Gorge Road near the latter intersection.
On the day of the accident the property at the north-easterly corner of the intersection of Oakdene Avenue and Anderson Avenue was owned and controlled by respondent and on it was erected a sizeable brick building fronting on Anderson Avenue. Leaders, located on the rear wall of the building, were designed to carry rain and melted snow from the roof. Plaintiff produced proof that one of those leaders was placed near the rear corner of the building bordering on Oakdene Avenue and that the leader terminated at a point near, but above, the paved rear of respondent's property and was so located that any water discharged from it of necessity flowed across the public sidewalk in front of the adjacent property, described in the record as the Ranieri-Sciola property, which bordered on Oakdene Avenue and was downhill from respondent's property. The leader was located entirely within the boundary lines of respondent's property; no portion of it extended onto the public sidewalk, but the paving covering the rear of defendant's property sloped toward and joined said sidewalk.
On the morning of the day of the accident plaintiff boarded a bus on Anderson Avenue to go to his place of employment. In order to reach the bus stop it was necessary for him to walk from his home up the hill past the Ranieri-Sciola and the respondent's properties. He testified that he passed the area at about 7:00 A.M., and found that although snow had been cleared from the sidewalk in front of the former property, so that a path for walking was available, the sidewalk bordering respondent's land was so covered with snow as to be impassable. He stated that from that point he was obliged to walk in the street in order to reach the bus stop on Anderson Avenue. Plaintiff did not visit the area again until about 7:30 P.M. that evening on his return from *227 work. Although during the day the snow had not been removed from the sidewalk along the Oakdene Avenue side of respondent's property, it had been trampled sufficiently to enable plaintiff to use the sidewalk instead of the road area as he walked down the hill. However, at the boundary line between respondent's property and the Ranieri-Sciola property the condition of the sidewalk changed, as the snow had been removed in front of the latter property. Plaintiff had walked only "2 or 3 feet" on the cleared portion of the sidewalk in front of the Ranieri-Sciola property when he slipped on ice and suffered such a severe fall as to render him unconscious. Plaintiff presented proof that the ice on which he had slipped had formed on the sidewalk as a result of water flowing directly from the leader above described. The testimony reveals that on other occasions prior to the day of plaintiff's fall the owners of the Ranieri-Sciola property had complained to respondent about the flow of water from the leader downhill and onto the sidewalk in front of their property.
Essentially the foregoing constituted the evidence when motions for dismissal were made by defendants J. & D., Inc. and the owners of the Ranieri-Sciola property. The motions were granted as to both defendants. Plaintiff has not appealed from the trial court's determination that there was "no evidence of negligence on the part of the defendants Ranieri and Sciola." As to the respondent, the trial court stated that: "Under the New Jersey cases, the Jessup case [Jessup v. Bamford Bros., Co., 66 N.J.L. 641 (E. & A. 1901)], the Saco case [Saco v. Hall, 1 N.J. 377 (1949)] and the Pierri v. Faure case [14 N.J. Super. 172 (App. Div. 1951)] and the rule sustained there * * * the plaintiff has no right of action on such facts, no issue for the Jury." The court held that as the leader in question did not physically intrude on the public sidewalk respondent was without liability.
In Saco, supra, it appeared that appellant had sustained personal injuries when she slipped and fell upon an icy *228 sidewalk in front of a factory building, allegedly in the possession and control of defendant. The sidewalk occupied the entire area from the curb to the building. Gutters on the roof of the building allegedly overhung the sidewalk. Leaders, located on the side of the building, were designed to carry rain and melted snow from the roof gutters to iron pipes and then to "a sewer or other depository." Evidence presented on behalf of plaintiff showed that defendant had permitted one of the leaders to become so deteriorated that water escaped through a slit in it and poured onto the sidewalk where it froze and created the icy condition which caused plaintiff's fall. The trial court, in granting a motion for a nonsuit (1 N.J., at page 380), "held that an owner is only responsible when, for the protection of the public and not for his own exclusive benefit, he tries to carry water either across or under the sidewalk" and that as the proofs failed to show any such attempt by defendant he was entitled to a dismissal.
The Supreme Court disagreed and in ordering a new trial said (1 N.J., at page 383):
"There seems to be, and we hold there is, no valid distinction between a situation where an abutting owner invades and makes use of the public easement for his own exclusive benefit by erecting or installing a drain, grating, coal hole or other device in or under the sidewalk, in which case he is under continuing duty to keep this part of his property in repair so that it will not deteriorate into or create a danger to the public using the sidewalk, and the situation where there is a similar invasion of the public easement for the owner's benefit by the erection and use of devices located over and above the sidewalk which also through neglect can deteriorate to the point where there is created a dangerous condition in the public easement or which becomes the proximate cause creating or producing a dangerous obstruction, impediment or condition in the free and safe use of the sidewalk by the general public. In both instances where there is a breach of this duty the owner is liable to respond in damages."
The court then added the following dictum, upon which defendant relies heavily:
*229 "In all other cases or situations where the owner of the property has constructed a system of drains, gutters or leaders to drain excess water off his structures or property the rule of Jessup v. Bamford Bros. * * * shall apply. It likewise applies in all cases where the owner has not erected any such system." 1 N.J., at pages 383-384.
The rule in Jessup was expressed by the court in Saco as follows (1 N.J., at page 381):
"The rule of the Jessup case, wherein the water seeped and ran through the weepholes of a retaining wall and froze on the sidewalk, is that the owner of land has the right to occupy and improve it, either by changing the surface thereof or erecting buildings or structures thereon, even though the mode of occupation or the improvement by construction thereon will cause the rain or snow falling on its surface or flowing on it from adjacent property, to be diverted and accumulate in larger quantities on the land adjacent thereto. This right is unfettered and cannot be interfered with or restrained by any consideration of injury to others which may be occasioned by the flow of mere surface water, in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment. See also Bowlsby v. Speer, 31 N.J.L. 351 (Sup. Ct. 1865); Durkes v. Town of Union, 38 N.J.L. 21 (Sup. Ct. 1875); Zamelli v. Trost, 132 N.J.L. 388, affirmed 133 N.J.L. 465 (E. & A. 1945); Sullivan v. Browning, 67 N.J. Eq. 391 (Ch. 1904); Lightcap v. Lehigh Valley, 90 N.J.L. 620 (E. & A. 1917); War v. Mazzarella, 137 N.J.L. 736 (E. & A. 1948).
An owner is under no duty to keep the sidewalk abutting his land free from the natural accumulation of snow and ice. Sewall v. Fox, 98 N.J.L. 819 (E. & A. 1923). * * *"
The holding in Saco was subsequently applied in the case of Pierri v. Faure, supra. There the plaintiff had sustained personal injuries when she slipped and fell on ice which had formed on the cement sidewalk parallel to the building owned by defendant but separated from it by a dirt area. The complaint in Pierri charged (14 N.J. Super., at pages 173-174):
"* * * `the defendants improperly allowed the drains or leaders on said building designated to carry off rain and melted snow and ice from the roof of said premises to become broken and in disrepair, and the defendants also changed the normal course *230 of the flow of said water from the roof so that as a result thereof the same was discharged on the sidewalk, there to be congealed into ice resulting in the maintenance by the said defendants of a public and private nuisance' and, further, that `The defendants should have known of the existence of said nuisance by the exercising of reasonable diligence.'"
At the trial defendants had moved for dismissal at the end of plaintiff's case and moved for judgment at the end of the entire case. On appeal they urged that the trial court had erred in denying their motion for judgment. We agreed with defendants and found it of crucial importance that "there is an absence of any evidence to indicate that the installation was within the limits of the public easement, as established or defined by law or ordinance, and an absence of any evidence to indicate that the owner had impliedly extended the public use by invitation up to the line of the building proper." (14 N.J. Super., at page 176).
The respondent contends that the Pierri case is dispositive of the appeal in the case at bar. Before assessing the correctness of that contention it is essential that we consider the effect of the Supreme Court's recent rejection of the formerly recognized rule governing control of surface water as between landowners (Armstrong v. Francis Corp., 20 N.J. 320 (1956)), with specific attention focused on the effect, if any, of such changed concept on the question of harm to a pedestrian by the intrusion of surface water from private property onto a public sidewalk.
The instant case appears to fall within that class of cases which the dictum quoted above from Saco v. Hall, supra, 1 N.J., at pages 383-384, stated was to be governed by Jessup v. Bamford Bros., Co., 66 N.J.L. 641 (E. & A. 1901). To determine the effect of Armstrong on the case at bar we turn our attention to a more detailed analysis of Jessup. There defendant, owner of property located on a hillside, had erected a retaining wall along his property line bordering on the public sidewalk. In order that the wall should not permanently hold back the surface water upon *231 the lot of the defendant, "weepholes" to allow its escape were located at different places along the base of the wall. At one of the weepholes a six-inch drain pipe was inserted to enable the surface water to flow more rapidly from the aperture. Plaintiff, while passing along the sidewalk in front of the defendant's premises, slipped and fell, breaking her arm. Her fall was due to the presence of ice on the sidewalk which lay just in front of the drain pipe opening and which "had formed from the water which discharged through that pipe." In directing that the judgment, entered in favor of the plaintiff on the verdict of the jury, be reversed because of errors in the court's charge, the appellate tribunal relied on the cases involving disputes between owners of private property over the disposition of surface water, e.g., Town of Union ads. Durkes, supra, 38 N.J.L. 21, and Bowlsby v. Speer, supra, 31 N.J.L. 351. In the former case the court cited with approval the principle that "surface water was the common enemy, which every proprietor may fight and get rid of as best he may." (Emphasis supplied)
In Armstrong, supra, the court determined that, in resolving disputes between owners of private property, allowance should be made for "differences in factual situations" in determining the liability of the landowner who alters the flow of surface waters with resulting material harm to other landowners (20 N.J., at page 326). It rejected the "common enemy" rule theretofore controlling, declared its "adherence" to the "`reasonable use' rule laying down the test that each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." (20 N.J., at page 327). In this connection the court declared (20 N.J., at page 330):
"The rule of reasonableness has the particular virtue of flexibility. The issue of reasonableness or unreasonableness becomes a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the *232 amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter."
The Armstrong case doctrine has been recognized in subsequent decisions. Hopler v. Morris Hills Regional District, 45 N.J. Super. 409 (App. Div. 1957); Yonadi v. Homestead Country Homes, Inc., 42 N.J. Super. 521 (App. Div. 1956).
While, as we have above noted, Armstrong, supra (20 N.J. 320), involved a dispute between owners of private property and not, as in the instant case, an alleged invasion of a public easement, when we recognize that the "common enemy" rule foundation of Jessup is no longer the law, the significance of Armstrong in the instant case is emphasized. We therefore hold that the doctrine enunciated in Armstrong, supra, decided by the Supreme Court five years after the decision in Pierri v. Faure, supra, 14 N.J. Super. 172, requires the application of the "reasonable use" rule in the case at bar. The trial court erred in not applying it and its judgment, dismissing plaintiff's case, is reversed. The cause is remanded for action not inconsistent with this opinion. No costs.