LOUIS RIZZI, PLAINTIFF-APPELLANT, v. FRANK D. ROSS, DEFENDANT-RESPONDENT.

Argued October 21, 1936—Decided January 22, 1937.

For the plaintiff-appellant, *Harry Cohn* and *Nathan Geller*.

For the defendant-respondent, *Joseph C. Paul.*

The opinion of the court was delivered by

CASE, J. Plaintiff sued for personal injuries received on defendant's apartment house premises and caused, as alleged, by the defendant's negligent failure to repair a common stairway. The trial judge in the Essex Circuit, at the close of plaintiff's case, granted judgment of nonsuit upon the ground that the defendant, although the owner, was shown by the proofs to have stripped himself, as a matter of law, of all power over and control of the premises. Plaintiff appeals.

The question turns upon the construction to be given to two agreements, one of them made between defendant, as owner, and Fidelity Union Title and Mortgage Guaranty Company, as mortgagee, and the other, consequent upon the first, between defendant and one Lipstein. The first instrument recites that there has been such a default in the owner's obligations under the bond and mortgage that the mortgagee is empowered to make entry and collect rents, which right, however, the mortgagee postpones upon the proposal by the owner that the latter appoint, by an instrument to be approved by the mortgagee, Lipstein "agent and trustee of the owner for the management of the said property and the collection and disbursement of the income thereof" but subject to the election of the mortgagee at any time to terminate the postponement and to exercise its rights under the breached bond and mortgage. The agreement further provides that nothing therein shall be construed, by implication or otherwise, as constituting the Fidelity Company a mortgagee in possession. The second instrument is between the owner and Lipstein. Lipstein is therein referred to both as "trustee" and as "agent." It is recited that the owner wishes Lipstein to assume the management and operation of the premises at a compensation of five per centum of the rental collections. The formal agreement consists of ten numbered paragraphs. It provides that Lipstein "shall assume and take over the management and operation" of the premises, collect the rents "which may at any time be or become due to the said owner," institute summary proceedings in his own name or the name of the owner, make hirings and leases, "cause such repairs to be made from time to time as are necessary for the proper maintenance and operation of said premises including plumbing, carpenter work and steamfitting but any and all substantial repairs shall be made only with the consent and approval of owner and Fidelity Union Title and Mortgage Guaranty Company mortgagee; and he shall purchase fuel, oil and coal and other supplies that may be necessary for heating and properly maintaining said premises;" that Lipstein shall pay the balance of the moneys monthly to the mortgagee, and shall pay any balance on hand at the termi-

nation of the agreement to the owner if payment cannot be made to any authorized purpose and if the mortgagee shall consent. The instrument further provides that "for the purpose and objects set forth in the agreement the 'owner' does hereby constitute and appoint the said Abraham Lipstein agent and trustee of the owner with power and authority described and limited by the terms of this agreement; and the parties hereto agree that this agreement shall be canceled or revoked only upon the request of Fidelity Union Title and Mortgage Guaranty Company and that they shall cancel this agreement upon such request." A paragraph is devoted to saving the mortgagee from certain results—from being a mortgagee in possession, from waiving its rights, and the like.

There are no appropriate words of grant or demise or, as between the owner and Lipstein, of lease. The nearest approach lies in the assignment of rents and income, subject to rights of the mortgagee under prior assignment, for the specified objects and purposes. But one may assign the emoluments of ownership without thereby divesting himself of its obligations. We consider that the two documents, which may for our purposes be considered as a single tripartite agreement, manifestly create an experimental undertaking, subject to termination at any time at the mortgagee's election, with two primary purposes, first, to give the mortgagee some of the advantages and to shield it from some of the disadvantages it would have by going into possession, and second, to preserve, to some extent, the owner's estate by placing such management of the property as the mortgagee has stipulated is necessary in a person who, notwithstanding the appointment both in the making and in the undoing requires the approval of the mortgagee, will be the owner's representative. The draftsman of the instrument seems not to have had in mind a clear distinction between trusteeship and agency, but we think that that, as the case turns, is not important, for the powers which the appointee, whether as trustee or as agent, is to exercise are specifically set forth and do not rid the owner of his responsibility. What, if any, liabilities are visited upon either Lipstein or the mortgagee we need not consider. If the intention was to place upon Lipstein, and

for him to assume, the exclusive duty to repair, and to vest in him as trustee such exclusive possession as would entail that duty and exclude the owner from all right and duty in that respect, the instruments, whether considered together or singly, fail of their purpose. The New York Court of Appeals in *Sciolaro* v. *Asch*, 198 *N. Y.* 77; 91 *N. E. Rep.* 263, referring at the beginning of the quoted matter to persons who are deemed to have been invitees in the appellant's (owner's) building because they had business therein, said:

"As to such persons the law imposed upon him as owner the duty of seeing that the premises were in a reasonably safe condition for access and egress. *Griffen* v. *Manice*, 166 *N. Y.* 188; 59 *N. E. Rep.* 925; 52 *L. R. A.* 922; 82 *Am. St. Rep.* 630; 2 *Shearm. & R. Negl.*, § 704; *Beck* v. *Carter*, 68 *N. Y.* 283; 23 *Am. Rep.* 175. This was a personal duty which the appellant could not delegate. 'One who is personally bound to perform a duty cannot relieve himself from the burden of such obligation by any contract which he may make for its performance by any other person. Therefore the fact that he may have used the utmost care in selecting an agent to perform this duty, or that he has entered into a contract with any person by which the latter undertakes to perform the duty, is no excuse to the person upon whom the obligation originally rested, in case of failure of performance. His obligation is to do the thing, not merely to employ another to do it.' *Shearm. & R. Negl.* (*5th ed.*), § 14."

The stairway upon which appellant was injured appears to have been on the outside of the building. The collapse came when plaintiff was on the third floor platform, and it was open to the jury to find from the testimony that the entire stairway from that point down parted from the building and sank to the ground. It was a fact question whether the repairs that should have been made were or were not substantial. If substantial, then Lipstein, by the express terms of the writing, had no authority to make them without the consent and approval of the owner and the mortgagee. But whether the required repairs were slight or substantial, the ultimate liability must lie somewhere. It is the duty of an owner to use reasonable care to see that such portions of the general prem-

ises of an apartment property as are reserved to him for his care, preservation and repair are reasonably safe for the use of the tenants and those who are impliedly invited to come upon them; and that duty cannot be delegated or transferred. *Hussey* v. *Long Dock Railroad Co.,* 100 *N. J. L.* 380. It is not disputed that the duty to make the repairs rested upon the person who stood in the owner's shoes in respect of that duty. Oral proofs that rents were paid to and receipts given by Lipstein and that Lipstein represented himself as being the agent of Fidelity Union Title and Mortgage Guaranty Company and that the owner was not seen about the premises are not controlling. The burdens of ownership are not so easily unloaded. There was no conveyance out of Ross. However efficacious a mere contract may be to impose an obligation upon others, it will not suffice to relieve the owner from the duty set out above.

We conclude that the nonsuit of the plaintiff was error. The judgment below will be reversed, and a *venire de novo* will issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 13.