RITA VISAGGI, AN INFANT BY HER GUARDIAN AD LITEM, SALVATORE VISAGGI AND SALVATORE VISAGGI, PLAINTIFFS-RESPONDENTS, v. FRANK'S BAR AND GRILL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued February 6, 1950—Decided February 27, 1950.

94

[redacted]

*Miss Elsie L. White* argued the cause for appellant (*Mr. Louis Sleisel,* attorney).

*Mr. Louis J. Greenberg* argued the cause for respondents (*Mr. Samuel M. Cole,* attorney).

The opinion of the court was delivered by

ACKERSON, J. This action was initiated by Rita Visaggi, a minor, through her guardian *ad litem,* to recover damages for injuries allegedly occasioned by a fall due to slipping on snow-covered ice on the front porch of the apartment house at No. 975 Westside Avenue, Jersey City. The accident occurred at 10:45 A. M. on January 25, 1948, and it is alleged that the existence of the underlying ice was unknown to Rita prior to her fall. Her father joined in the action to recover damages incurred by him in consequence of his daughter's injuries.

It is not disputed that the defendant owned the apartment house and had control of the porch for the common use of the tenants and their guests and that Rita was such a guest and therefore occupied the status of an invitee. The deter-

minative question at the trial was whether or not the defendant had negligently permitted snow and ice to remain on the platform and steps of the porch under circumstances creating a dangerous condition.

Defendant moved at the close of the plaintiff's case, and again at the completion of the entire testimony, for the dismissal of the action on the ground that no negligence on the part of the defendant had been shown. Both motions were denied, the case was submitted to the jury and a verdict was returned in favor of both plaintiffs. From the judgment entered on this verdict the defendant appealed to the Appellate Division of the Superior Court, and, while pending there, the appeal was certified here on our own motion.

The trial judge in his charge to the jury specifically referred to the cases of *Boyle v. Baldowski*, 117 *N. J. L.* 320 (*Sup. Ct.* 1936), and *Griffin v. Hohorst, Inc.*, 14 *N. J. Misc.* 421 (*Sup. Ct.* 1936), as expounding the applicable rule and concluded with respect thereto as follows:

"* * * as I have said, that while it is the duty and responsibility of the landlord to exercise ordinary care to keep the steps reasonably safe for use by tenants and guests of tenants in this kind of case it is also necessary that you be satisfied that the landlord had a sufficient previous opportunity to remedy the danger if, in fact, the situation was, as you find, a dangerous situation."

The defendant agrees that the applicable rule was correctly stated but contends here, as it did below, that there is no evidence, nor reasonable inferences from the evidence, to indicate that the defendant was negligent within the scope thereof.

Turning to the record we find that for several days prior to the accident on January 25th, there had been heavy intermittent snow storms which left considerable snow on the ground throughout that period. Rita Visaggi testified that at 10:45 that morning, as she was leaving the apartment house, after visiting a friend who was a tenant therein, she opened the front door, put her right foot out on the platform at the top of the steps, slipped on ice overlain with snow and fell down the steps to the street. Immediately after her fall

she noticed ice on the stoop where her coat had brushed the covering of snow away.

Anthony Furmato, one of the owners of the corporate defendant, Frank's Bar and Grill, Inc., testified that between 2 and 3 o'clock A. M. on January 25th, after the adjoining tavern, also operated by the defendant, had closed for the night, he personally "swept" the stoop with a "broom" as he had done at about the same hour for several nights immediately preceding the one in question. When asked if he was sure there was no ice on the stoop when he swept it on January 25th he replied: "I am not sure, but I didn't see it."

One of defendant's witnesses was the man in charge of the United States Weather Bureau in New York City, who testified from records compiled by observers who operated there under his supervision, that on January 24, 1948, it snowed from 11:08 A. M. continuously until 10:32 A. M. the next day, January 25th, which would indicate that only thirteen minutes elapsed between the cessation of the storm and the accident which occurred at 10:45 the same morning. Defendant, therefore, argues there was insufficient opportunity to remove any dangerous condition which may have resulted from the storm, relying on the case of *Bodine v. Goerke Co.*, 102 *N. J. L.* 642 (*E. & A.* 1926). However, a tenant who lived in the apartment house testified that the stoop was full of ice and snow when he returned from work at 10 o'clock on the night of January 24th (which was Saturday); that it snowed throughout the night, but when he went to church on January 25th, "about 7 to 8 o'clock in the morning," it was not snowing and did not snow at all up to noon of that day, thus indicating a lapse of over three hours between the cessation of the storm and the fall in question.

While this conflict in the testimony regarding the time when it stopped snowing on January 25th, oddly enough, has not been referred to in the briefs with respect to its bearing on liability, nevertheless, it was properly before the jury on that question as the result of the court's charge relative to the necessity of the existence of a reasonable opportunity for the removal of any accumulations of ice and snow.

Furthermore the case as tried involved an additional theory of negligence in that, regardless of when it stopped snowing, and assuming the defendant's agent swept the stoop with a broom between 2 and 3 o'clock on the morning of the accident, the plaintiff insists that the cleaning was so carelessly done as to leave a pre-existing coating of ice under the falling snow creating a dangerous condition which the defendant knowingly allowed to continue unabated and without warning while its tenants and their guests were negligently permitted to use the porch with that condition existing.

In this connection it is to be noted that not a single witness was produced by the defendant to contradict the testimony of Rita and her witnesses, hereinabove referred to, that there was ice under the snow at the time and place of her fall. Additionally one witness testified that, while shopping for household supplies on January 24th, she passed this stoop and noticed that the steps were covered with ice and snow. The tenant, already referred to, said that he saw ice and snow on the platform and steps at 10 P. M. on January 24th. While all of the witnesses say it snowed throughout that night, none said there was any rain, hail, sleet or melting. Indeed the evidence clearly discloses, as hereinafter specifically noted, that the temperature during all of that period was well below freezing. Therefore if defendant's witness, Furmato, swept the stoop with a broom between 2 and 3 A. M. on January 25th, it is reasonably inferable that a pre-existing coating of ice was negligently permitted to remain under the falling snow creating a dangerous condition on the stoop used by the tenants of the building and their guests. There could have been no melting of the snow during that period because several of the witnesses testified that it was very cold that night and the next morning. The witness from the Weather Bureau was the only one who testified as to actual temperature readings, and his records showed that at 10:30 A. M. on January 25th the temperature was 16 degrees above zero and the maximum for that day was 29 degrees above zero at 4 o'clock in the afternoon, the minimum was 13 and there would be no melting at such temperatures. His records

also disclosed that the only time there was a "melting temperature" from January 22nd through January 25th, was on the former date when the thermometer recorded 36 degrees above zero at 3 A. M. and dropped to 20 degrees above zero by midnight, and it never got above freezing again until after January 25th. Therefore, since the record showed 1½ inches of snowfall on January 22nd, it is a legitimate inference that it melted on the stoop to some extent that day, froze into ice the same night, and was not removed by the broom sweepings which the witness, Furmato, said had been done every morning around 2 A. M. during that period.

As already observed, the defendant relies upon the case of *Bodine v. Goerke Co., supra,* but it is not in point. There the storm was of relatively short duration, the accident occurred while it was still snowing, there was no evidence of prior cleaning before the accident and the plaintiff did not slip because of ice underlying a coat of snow.

Suffice it to say the rule is well settled that upon motions for dismissal, the equivalent of motions for nonsuit or directed verdict under the former practice, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Andre v. Mertens,* 88 *N. J. L.* 626 (*E. & A.* 1915); *Boyle v. Baldowski, supra.*

Surveying the record with this rule in mind, we are led to the conclusion that the trial judge did not err in denying defendant's motions for dismissal, and in submitting the case to the jury. The judgment below is therefore affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.