47 N.J. Super. 409 (1957)
136 A.2d 41
BERTHA SKUPIENSKI, PLAINTIFF-APPELLANT,
v.
FRANK MALY AND ANN MALY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued August 12, 1957.
Decided November 12, 1957.
*410 Before Judges GOLDMANN, WAESCHE and KNIGHT.
*411 Mr. Charles Blume argued the cause for appellant (Mr. Benjamin Yanowsky, attorney).
Mr. Sheldon Schiffman argued the cause for respondents (Mr. Wilbur A. Stevens, attorney; Mr. Donald B. Connolly and Mr. Schiffman, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff instituted an action to recover damages for personal injuries resulting from a fall on defendants' premises. The jury returned a verdict of no cause of action, and plaintiff appeals from the accordant judgment.
The accident happened on Christmas Eve 1955. Plaintiff was a tenant in a two-family duplex dwelling owned by defendants who lived in the other part of the structure. The entrance doors to the two apartments faced toward the rear. There was a canopy or sloping overhang, measuring about 5' x 4', over each door and two-step porch. A concrete walk ran the full length of the premises, past plaintiff's and defendants' doors, and joined another walk leading at right angles back to a garage or shed where there was a garbage pail supplied by defendants for their own and plaintiff's use.
There had been a fall of snow sometime previous to December 24, and defendants had cleaned the walk over its entire width. However, snow remained on the grass, roofs and canopies. It drizzled for a while on the morning of December 24, followed by a thaw, so that water dripped from the canopies onto the walk. It appears there was a slight depression in the walk directly in front of defendants' porch and that a small amount of water gathered there. Plaintiff and her son, as well as defendants, had used the walk during the day. The son testified that when he left the house at 1 P.M., and again on his return at about 3 P.M., he noticed that the walk in front of defendants' door was wet with water dripping from the overhang. He went past the same spot at 6 P.M. and slipped; he found that the *412 dripping water had begun to freeze, but he did not mention this fact to defendants.
Plaintiff also testified to the dripping from the melted snow on the canopy, and to the wet condition of the walk in front of defendants' door when she passed that way at 3 P.M. At about 9:30 that evening she left her apartment to empty some garbage in the pail located in the garage. She noticed what looked like water in front of defendants' door, but which was actually ice. She slipped on the ice, fell on her back and head, and suffered the injuries complained of. She doesn't know how long she lay there, but when she came to she somehow managed to get to defendants' door, rang the bell, and told them of the icy condition. Plaintiff has been under medical attention ever since.
Defendant Frank Maly had noticed a glaze of ice in front of his door at 6:30 A.M. He, too, testified there was a thaw during the morning and afternoon. He said he noticed the snow on the canopy, melting and dripping down. The sidewalk remained wet all day. The last time he had occasion to go outside his apartment and onto the sidewalk was between 5 and 6 P.M. and he observed no ice adjacent to his steps at that time. He remained in the house all evening until he answered plaintiff's ring at about 10:30 P.M. It was then he saw the ice glaze on the walk. Asked on cross-examination if he would say there was never any ice on the walk in front of his entrance, he replied he could not say that.
Maly's wife, the co-defendant, remained in the house after returning home late that afternoon. She stated that ever since the sidewalk was installed, some eight years before, there had never been an occasion when water or ice collected in front of her door.
Plaintiff contends there was error when the trial judge, in the course of his charge, said there would be no liability if the accident had happened on a public sidewalk. The remark was purely incidental and contrastive, for he at once went on to say that the sidewalk with which the court and jury were concerned was entirely upon defendants' *413 property, and was used in common by them and their tenant. In that situation, he said, "the law imposes upon the landlord the obligation of using reasonable care to have the premises reasonably safe for the purpose intended." Nor was there error, as plaintiff argues, when the trial judge said, "We are not dealing with a large tenement house or a large apartment house with great numbers of people walking back and forth." This, again, was purely by way of contrast, for he made clear that what was involved was a two-family house, occupied by only one tenant and the owner.
Read in context, neither reference was objectionable. Consideration of the charge in its entirety leaves no room for concern that the jury may have been misled. The passing references by the trial judge, read in the context of the entire charge, could not rationally have involved the jury in a consideration of irrelevant matters.
Plaintiff cites several cases in an attempt to persuade us that the injection of these matters was error. Upon examination we find that they dealt with situations where there was an erroneous charge, or an accurate statement of the law coupled with an erroneous charge. See, for example, Guzzi v. Jersey Central Power and Light Co., 12 N.J. 251, 260 (1953); Davidson v. Fornicola, 38 N.J. Super. 365, 371 (App. Div. 1955); Friel v. Wildwood Ocean Pier Corp., 129 N.J.L. 376, 378 (E. & A. 1943).
However, error is laid to another part of the charge where the court said:
"* * * There has been some talk about leaders and gutters and things of that sort, which is wholly immaterial, because you don't have to have any gutters or leaders on your house if you don't want them. There is nothing that obligates you to do it in any respect. In this particular case we are talking about a little overhang only three or four or five feet wide over the back steps. You will see that in the photographs. And nobody, not even the expert produced on behalf of the plaintiff, says that there should have been a gutter there. And whether there should or should not is entirely beside the point; there is no allegation of any improper construction or anything of that sort. We are only concerned with whether or not this dangerous condition, if there was one, existed for such a length of time that Mr. and Mrs. Maly should have *414 known about it and done something about it. So you don't have to worry about gutters or leaders or anything of that nature."
Plaintiff's counsel duly excepted to the language used by the court. We find reversible error in this aspect of the charge. The facts as stated are inconsistent with the record, and the court erred in its statement of the law.
The trial judge was mistaken when he told the jury there was "no allegation of improper construction or anything of that sort" in the case. True, the original complaint did not allege improper construction of the overhang. However, this issue was anticipated, at least by implication, in the statement of defendants' contentions set out in the pretrial order. And if there be any doubt on this score, the issue was definitely made a part of the case when, after counsel's opening, the court permitted amendment of the pretrial order to include "improper construction that there was no gutter across the roof," and this after defendants' attorney frankly admitted there was no surprise, in light of his telephone conversations with opposing counsel. It need hardly be stated that this amendment, correctly allowed, made the issue of improper construction as much a part of the case as if included in the pleadings. That issue was actually tried. Indeed, defendants in their brief agree it was one of the issues to be determined at the trial.
The further statement by the court in its charge that plaintiff's expert did not say there should have been a gutter on the overhang does not accord with the record. The expert, a builder of houses and general contractor, said in answer to the trial court's direct question whether there was any standard requiring a gutter for an overhang of the type involved in this case, that there was such a standard, and this roof was a little too large not to have a gutter. The custom of the building trade, he went on to say, was to put a gutter on a roof 20 square feet or more in area, and this canopy was close to that figure.
Thus, the factual issue of improper construction was squarely presented at the trial. The court sent the case to *415 the jury on the single issue of whether defendants had constructive notice of any dangerous condition upon the sidewalk, no actual notice having been shown. Whether or not this limitation on the jury's consideration of the case was error depends on the correctness of the court's statement in its charge that there was nothing in the law requiring a person to have gutters or leaders on his house. The trial judge was under the impression that there were "plenty of cases" in New Jersey on point. He apparently was referring to those dealing with injury suffered by the user of a public sidewalk and holding that an abutting owner is under no duty to construct a drainage system upon his building for the purpose of preventing an accumulation of rain or water from running across the public sidewalk and freezing. E.g., Saco v. Hall, 1 N.J. 377, 380 (1949); Millar v. United Advertising Corp., 131 N.J.L. 209, 211 (E. & A. 1944); Zwickl v. Broadway Theatre Co., 103 N.J.L. 604, 606 (E. & A. 1927).
As contrasted with the above rule, defendants owed plaintiff, as their tenant, a duty to exercise reasonable care in keeping the walk in a reasonably safe condition. Had the injury been caused by the maintenance of a defective drainage system, the jury would have been justified in returning a verdict for plaintiff. Turzay v. Berkowitz, 125 N.J.L. 61 (Sup. Ct. 1940); DeMateo v. Perano, 80 N.J.L. 437 (E. & A. 1910); and see, generally, Annotation, 26 A.L.R.2d 610 (1952). It is not logical to deny recovery simply because no drainage system had been provided, if failure to do so resulted in a breach of defendants' duty to maintain the walk in a reasonably safe condition.
There was sufficient evidence from which the jury could have found that defendants, in not installing a gutter on the canopy, failed to act as reasonably prudent persons would in the circumstances, and so brought about the icy condition of the walk which caused plaintiff to sustain injury. It was therefore error to withdraw from the jury that part of the case relating to negligence by reason of improper construction.
*416 This conclusion makes unnecessary any consideration of plaintiff's contention that the trial court erred in failing to charge the jury in certain requested particulars.
Reversed.
WAESCHE, J.A.D. (temporarily assigned) (dissenting).
I think the judgment of the trial court should be affirmed for the reasons hereinafter stated.
The defendants were the owners of a two-family dwelling located on Fairfield Road in Wayne Township, Passaic County, New Jersey. They occupied one of the apartments of said dwelling. The plaintiff occupied the other apartment as the tenant of the defendants. The entrance to the apartment occupied by the defendants was sheltered by a small roof or canopy over the door, which extended out from under the eaves approximately four feet. This canopy was a shed roof type.
The defendants constructed and maintained a concrete sidewalk for the common use of the occupants of their two-family dwelling. This sidewalk led to the entrance of the plaintiff's apartment, and it led also to the entrance of the apartment occupied by the defendants. There was no gutter along the lower edge of the aforesaid canopy, which extended out over a part of the sidewalk.
On December 24, 1955, at about 9:30 P.M., the plaintiff slipped and fell on ice on the sidewalk at the entrance to the apartment occupied by the defendants. During that day, water, caused by rain and from melting snow, had been dripping from the said canopy onto the sidewalk. The plaintiff brought suit alleging that the accident resulted from the negligence of the defendants. The jury returned a verdict of no cause of action.
The defendants were under a duty to exercise ordinary care to see that the sidewalk was reasonably safe for the plaintiff to use. Griffin v. DeGeeter, 132 N.J.L. 381 (E. & A. 1944); Bohn v. Hudson & Manhattan R. Co., 16 N.J. 180 (1954). The trial judge charged the jury as follows:
*417 "This sidewalk, the sidewalk upon which the plaintiff fell, was entirely upon the property of the named defendants, Mr. and Mrs. Maly. It was a portion of the property used in common by the landlord, Mr. Maly, and his tenant, Mrs. Skupienski, and in that situation the law imposes upon the landlord the obligation of using reasonable care to have the premises reasonably safe for the purposes intended.
Now, the premises, of course, used in common by the landlord and tenant would include the sidewalk upon which Mrs. Skupienski fell, so that the obligation of Mr. and Mrs. Maly, the landlords, with respect to this sidewalk was to use reasonable care to have it reasonably safe for use.
Reasonable care is the care that any reasonably prudent person, any reasonably careful person would use in the same situation, and you must take into consideration the surrounding circumstances and the general situation.

* * * * * * * *
The law makes you the sole judges of the facts, the weight of the evidence, the credibility of the witnesses, the inferences to be drawn from all disputed questions of fact, and the final conclusions to be reached after a consideration of the facts, so there is no real reason for me to attempt to recount the evidence or review the testimony that you yourselves have already heard.
I am going to make a brief reference to the factual situation, but you must understand that it is merely in an effort to assist you in your determination and to point out to you the claims of the respective parties, and you are not bound by any statements of the factual situation which I may make unless it happens to coincide with your own personal recollection."
The verdict of no cause of action is to be understood as an effort on the part of the jury to conform to the judge's charge. Dewar v. Ruehle, 137 N.J.L. 305 (Sup. Ct. 1948); Lampert v. Mikos, 22 N.J. Super. 155 (App. Div. 1952).
The majority reverses the judgment of the trial court, because, in essence, they say that the trial judge, when charging the jury, said that (a) "there is no allegation of any improper construction (of the roof) or anything of that sort," (b) "not even the expert produced on behalf of the plaintiff, says that there should have been a gutter there," and (c) "you don't have to have any gutters or leaders on your house if you don't want them."
I disagree with the conclusions the majority reached on the above statements for the following reasons:
*418 As to (a)  that "there is no allegation of any improper construction (of the roof) or anything of that sort,"  it was immaterial whether there was such an allegation, and therefore that statement in the charge did not injuriously affect the substantial rights of the plaintiff.
As to (b)  that "not even the expert produced on behalf of the plaintiff, says that there should have been a gutter there,"  that was a true and fair comment on the testimony of plaintiff's expert witness. The trial judge has a right to comment on the testimony of a witness so long as he leaves the jury free to draw their own conclusions and determine the facts. Kneip v. New York & Long Branch R. Co., 102 N.J.L. 374 (E. & A. 1925); Davis v. Gibbs, 23 N.J. Super. 558 (App. Div. 1952). The expert's testimony relating to the gutter was, nevertheless, immaterial, and the comment did not, therefore, injuriously affect the substantial rights of the plaintiff.
As to (c)  that "you don't have to have any gutters or leaders on your house if you don't want them,"  that is a correct statement of the law. Furthermore, the statement was immaterial because there was no evidence that failing to put a gutter on the roof in question deviated from any standard of construction which is for the purpose of making the premises reasonably safe for use, or that such failure was the proximate cause of the accident. In the case of Bosze v. Metropolitan Life Insurance Co., 1 N.J. 5 (1948), the plaintiff testified that she slipped on the metal sill of the cab of the elevator. The trial judge excluded expert testimony relating to the construction of the floor of the elevator. The court held that the exclusion of the testimony did not constitute ground for setting aside the judgment in favor of the defendant because the construction of the floor of the elevator was not the proximate cause of the accident.
In the case of Zwickl v. Broadway Theatre Co., 103 N.J.L. 604 (E. & A. 1927), the theory was that the presence of ice on the public sidewalk was due to the negligence of the defendant. The evidence tended to show that the defendant had constructed a leader upon its building which discharged *419 the water from the roof of the building into a drain under the sidewalk. This leader was broken or otherwise out of repair so that the water from the roof, caused by rain or melting snow, spread itself over the sidewalk where it froze. The court said:
"The learned trial judge considered that he was bound to grant the motion to nonsuit by reason of the case of Jessup v. Bamford Brothers Co., 66 N.J.L. 641. We do not take that view. Undoubtedly, that case is authority for the proposition that an abutting owner, who collects the natural drainage of water from the roof of his building and discharges it upon the sidewalk through a pipe or other orifice, is not liable to a pedestrian, who, after this water had frozen upon the sidewalk, slips upon the ice so formed. And the reason for that doctrine is stated to be that the concentration of the flow of water, and its altered transmission to and upon the sidewalk, is a necessary incident to the legitimate and beneficial user of the property by the owner, and consequently, any injury arising therefrom is not actionable. If, therefore, the defendant in the present case had merely arranged a pipe or orifice for the purpose of permitting the water which gathered on the roof to fall upon the sidewalk, the doctrine of the Jessup Case would be applicable. But the evidence tends to show that the defendant did more than that. It tends to show that it constructed the leader or down pipe connected with the drain under the sidewalk for the purpose of carrying to the gutter of the street the water which accumulated on the roof of its building. And we think that the construction of the covered drain in connection with the down pipe justified the jury in finding, if it saw fit, that the system was designed for the protection of the public, and not solely for the defendant's benefit. Cavanagh v. Hoboken Land & Imp. Co., 93 Id. 163.
Of course, the defendant was under no legal obligation to construct such pipe and drain for the purpose of carrying the water into the gutter of the street (Sewall v. Fox, 98 N.J.L. 819); but, if it voluntarily assumed to do so, it was bound to use reasonable care to maintain the pipe and drain in such a condition that they would perform the function for which they were in part intended to perform of protecting users of the sidewalk from the dangers of ice formed by freezing water. Cavanagh v. Hoboken Land & Imp. Co., supra; Wolcott v. New York & L.R. Railroad Co., 68 N.J.L. 421. Of course, the defendant was under no legal obligation to continue such protection indefinitely, and might have abandoned its purpose at its own will, and thus relieved itself of liability to third persons who had knowledge or notice of such abandonment."
To the same effect, see Miller v. United Advertising Corp., 131 N.J.L. 209 (E. & A. 1943), and Saco v. Hall, 1 N.J. 377 (1949).
*420 In the three cases cited above, the court was considering the legal duty of the owner of a building to use a gutter or a leader to prevent water from flowing over the sidewalk which the public had a right to use. In the present case the court is considering the legal duty of the owner of a building to use a gutter to prevent water from flowing over a sidewalk which the plaintiff had a right to use. In the three cases cited above, the court said that the owner of the premises was not legally obligated to put a gutter on his building to prevent water, from rain or melting snow, flowing from the roof of the building onto the sidewalk. The legal principle which the court applied in the three cases cited above is the same legal principle which was applied in this case by the trial judge. To render a person liable on the theory of negligence there must be some breach of a legal duty. Brody v. Albert Lifson and Sons, 17 N.J. 383 (1955).
The plaintiff produced a building contractor to testify as an expert on construction. His entire testimony, insofar as it relates to the practice of putting a gutter on a roof or canopy of the size of the one involved in this case, is as follows:

Direct Examination
"Q. Do you know what the proper construction is with reference to a roof of this kind regarding rain or snow dripping down? A. The whole porch-roof area has no gutters and it should have a gutter in order to 
Q. Is that the standard way of constructing the roof? A. Yes. The roof is a little too large for that."

Cross Examination
"Q. Isn't it also true, Mr. Glaser, that there are very few instances where a small run-off or canopy, as we have described, has a gutter on it? A. That is right. Some of it is without it and some with it. It depends on the person who has the house and how safe they want to be.

* * * * * * * *
By the Court:
Q. We are talking now about a standard acceptable to the trade. A. In small areas you find very often there is no gutter, that is correct, but it is not right.
*421 Q. Let us straighten this out. It is not right, in your opinion, but we are talking now about the opinion of those in the trade, the generally accepted custom and usage in the trade. Is there any standard that requires a gutter where there is an overhang or canopy of this nature? A. It all depends on the area of the roof. This roof, I think it is a little too large for not having a gutter. Usually, we have a little pitched roof over an entrance, over a kitchen, the area is not even half the size, most people  the standard is just to forget a gutter.
Q. You are giving us your opinion. I am trying to ask you: Is there any standard in the trade or is it a matter of discretion with the builder? A. No. There is a standard in the trade, and the shed roof in that area there is at least a gutter and a leader. By Mr. Connolly:
Q. I thought you had just stated previously, sir, that there was no set standard as far as these run-offs or canopies or set-offs are concerned? A. I am just thinking about the area of that particular roof, having in mind how big that area is an architect would put a leader on.
Q. What is the separating area between a set-off or a canopy in which you don't have to have a gutter and one which you do? What is the trade or custom in the building practice? A. Well, usually we go, let us say, twenty square feet of roofing, the trend is to put a gutter on.
By the Court:
Q. You mean gutters are required when there are twenty square feet of roofing? A. About. About twenty square feet. It is too large to have just the water run off.
Q. What is the square footage of the roof we are concerned with here? A. I didn't measure it, but it should come close to it.
Q. Close to what? A. To twenty square feet.
By Mr. Connolly:
Q. Do you have any specific idea what is the area of this roof is? A. No. I didn't measure it.
Q. Then you really don't know how large this roof is? A. No.
Q. Is it not also true, to reiterate what I have said before, that there are many homes without gutters? A. That is right. That is correct."

Redirect Examination
"Q. Now, Mr. Glaser, if a house is built close to the sidewalk so that the roof comes even with the edge of the sidewalk and it has no gutters on it, is that standard construction? A. It is hard to answer. In a majority of the cases you don't find it, you don't find a gutter or leader because people just don't put it on; a lot of cases people put them on. It is something that I can't really answer yes or no.
Q. Does it make any difference where the house is located, with reference to a sidewalk, whether a gutter is standard construction or not? A. All I know is when we reach an area of twenty square feet, the architect draws one in the drawing, that is definite.
*422 Q. What is definite? A. That the architect draws a leader and gutter in the drawing, so we have to put it in whether we want to or not.
Q. Is that leader and gutter standard construction? A. For an area that large, yes."

Recross Examination
"Q. Mr. Glaser, I have one question I would like to ask you: Did you not say that where the roof area is twenty square feet or under that it is standard construction? A. Over.
Q. Would it not be, where the area of the roof is twenty square feet or under, it is standard construction not to put a gutter on? A. No, it is not standard, either, but most of the people don't do it, don't put it on.
Q. When the home is built, if it is built without a gutter in the specifications, is that not standard construction? A. Let us say it doesn't, it is not standard construction to have a shed roof over a front step. There is always a little gable roof, and that is the area on each side is very much smaller. I never put a shed roof over a front step yet.
Q. I am not asking you what you put over the front step. We had asked you what the trade or business custom was in this respect, and I thought you had answered previously that the area of separation was approximately twenty square feet. A. Yes.
Q. And that there are houses having some gutters and other houses that don't? A. That is correct.
Q. Would you say that homes that don't have these gutters are standard construction? A. All I know that the architects draw them in with that area, that is all I know.
Q. As far as the building line is concerned I am speaking of, would not it be where a home is constructed without a gutter having a roof area of twenty square feet or less that it is standard construction? A. Yes."
The foregoing testimony of plaintiff's expert witness is the only evidence in the case as to what constitutes standard construction of the roof or canopy over the entrance to the apartment of the defendants. This witness testified that many small roofs or canopies have no gutter; and that it was the custom not to put a gutter on a roof twenty square feet or less in area. He also said that it is usual to have "a little pitched roof over an entrance" in which case "the standard is just to forget a gutter." It is common knowledge that the roofs of many houses contain no gutter, and that the construction of a gutter on a roof of a house is not ordinarily for the purpose of making the premises reasonably *423 safe for use. It is also common knowledge that the absence of a gutter does not ordinarily render the premises unsafe to use. No expert opinion can establish negligence where common knowledge knows that there is none. In the case of Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482 (1956), the court said, "when the proof of a particular fact is so meager or so fraught with doubt that a reasonably intelligent mind could come to no conclusion but that the fact did not exist there is no question for the jury to decide."
Deviation from the usual standard of construction can be negligence only provided such deviation creates an unsafe condition in the particular thing or object constructed, or that the usual standard of construction is intended to obviate a dangerous condition. Kelly v. Loft, Inc., 124 N.J.L. 185 (E. & A. 1939). The testimony of the expert did not relate to a standard of construction intended to render the premises reasonably safe for use, nor did his testimony relate to a standard of construction which was intended to obviate a dangerous condition. A roof which has no gutter does not, ipso facto, make the premises unsafe for use; and a roof without a gutter is not unusual and does not, ipso facto, deviate from the usual standard of construction.
Moreover, the plaintiff's expert did not testify that it was standard construction to put a gutter on a roof or canopy of the size and kind of the one involved in this case. He said that gutters were not customarily put on roofs or canopies under 20 square feet in area. He said that he had not measured the roof or canopy involved in this case, and therefore he did not know its size, but he thought that it should come close to twenty square feet. Therefore, he could not say whether standard construction would require a gutter on this particular roof or canopy. The record does not contain any evidence of the exact size of the roof or canopy. Knowledge is an essential element of testimonial qualifications. Guzzi v. Jersey Central Power and Light Co., 12 N.J. 251 (1953). And in the case of Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295 (1954), the *424 court said that, "Where the opinion is so completely lacking in proper foundation as to be worthless it is not admissible."
In the case of Ristan v. Frantzen, 14 N.J. 455 (1954), the court said that, "A reading of the charge as a whole is required, and there is no error if the law is correctly and intelligently stated therein. The test is whether ordinary men and jurors would fail to understand the instructions given or be confused or misled." See, also, Kargman v. Carlo, 85 N.J.L. 632 (E. & A. 1913); Simons v. Lee, 117 N.J.L. 370 (E. & A. 1936); Kauderer v. McAllister Coal Co., 132 N.J.L. 410 (E. & A. 1944); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102 (1950). Professor Edmond M. Morgan said, in an article appearing in 47 Harv. L. Rev. 59, that, "No extended experience at the bar or upon the trial bench is required to produce a vivid realization that only in the exceptional case is the jury decisively influenced by the judge's instructions." A microscopic examination of the charge of a trial judge for some immaterial and isolated word or phrase on which to set aside the judgment of the trial court is a tragic consequence in the administration of justice, and a serious challenge to the right of trial by jury. The jurors get only a general impression from the charge of the judge, but such impression is sufficient for them to understand and to apply the law applicable to the case. It is impossible for jurors to examine out of context every statement a judge makes in the course of his charge. Jurors have a right to, and they do, use their own knowledge, observation, and experience in weighing the testimony and arriving at a verdict on the facts as they determine them to be, and the law as given to them in the charge of the trial judge. Their verdict is not based on some extraneous matter in the trial judge's charge. See the article of Professor Farley on "Instructions to Juries," 42 Yale L.J. 194.
A judgment should not be set aside unless, after an examination of the whole case, it appears that an error injuriously affected the substantial rights of a party. R.R. 1:5-3(c), R.R. 2:5. Costanza v. Cavanaugh, 131 N.J.L. 175 (E. & A. 1943); Cauco v. Galante, 8 N.J. 233 (1951). *425 The jury in this case was not misguided with manifestly resultant harm and injury to the substantial rights of the plaintiff.
In my opinion, this case was fairly tried; it was fairly submitted to the jury by the trial judge; and the jury rendered a fair verdict on the evidence. The judgment of the trial court should be affirmed.