BERTHA SKUPIENSKI, PLAINTIFF-CROSS-APPELLANT, v. FRANK MALY AND ANN MALY, DEFENDANTS-APPELLANTS.

Argued April 21, 1958—Decided June 2, 1958.

242

Mr. *Sheldon Schiffman* argued the cause for appellants
(Mr. *Wilbur A. Stevens,* attorney).

Mr. *Charles Blume* argued the cause for cross-appellant
(Mr. *Benjamin Yanowsky,* attorney).

The opinion of the court was delivered by

WACHENFELD, J.   The plaintiff brought an action to
recover damages for personal injuries sustained as the result
of a fall on the defendants' property.   The jury returned a
verdict of no cause for action, but the Appellate Division
reversed the judgment and remanded for a new trial.
*Skupienski v. Maly,* 47 *N. J. Super.* 409 (1957).   There
was a dissenting opinion, and both parties appeal as of right.

The questions raised relate almost entirely to the propriety
of the trial court's charge to the jury, the defendants arguing
that the part of the charge which the Appellate Division
deemed to be reversible error was, as a matter of fact,
perfectly proper, and the plaintiff, on her cross-appeal, con-
tending that the portions upheld by the Appellate Division
actually constituted prejudicial error.

The plaintiff, a tenant of the defendants, slipped and fell
on a patch of ice which had formed on a cement sidewalk
located on the property.   The premises consisted of a duplex
dwelling house in Wayne Township.   The building was
divided into two one-family apartments, the defendants
occupying one and the plaintiff the other.

The doors to both apartments were at the rear of the house
and comprised the only means of entrance and egress.   The
concrete walk ran the entire length of the building, past
and adjacent to the entrances to the two apartments.   It
intersected another sidewalk which led to a shed, where stood
a garbage receptacle supplied by the defendants for the use
of both parties.   The walk was not intended for public use.

Above the entrance to defendants' apartment was a small
roof-type canopy, extending outward from the house to a

distance of about four feet and sloping downward toward the ground at an angle of approximately 70 degrees. It was around five feet in width and partially overhung the portion of the cement walk which was immediately adjacent to the porch steps leading to the entrance door of the defendants' apartment. There was no gutter attached to the lower edge of this overhang.

The accident occurred on December 24, 1955. Two days prior there had been a snowfall and the defendants had cleared the cement walk. During the day in question, the snow remaining on the small canopy had been melting and dripping onto the cleared sidewalk. There had been a slight drizzle during the morning and afternoon, and the testimony indicates that the water on the sidewalk began to freeze at approximately 6 or 6 :30 P. M. The defendants testified they had not gone outside except during the afternoon and that they had no knowledge of the presence of ice on the sidewalk.

The plaintiff stated she had used the walk without mishap in the afternoon and had noticed then that water was dripping from the defendants' canopy onto the portion outside their door. At around 9 :30 P. M., she left her apartment to empty some garbage into the receptacle located next to the shed, and as she walked past the defendants' entrance she "slipped and fell down on my back and my head." She was rendered unconscious and when she recovered she "crept" to the defendants' door and rang their bell. Defendants gave her aid, and Mr. Maly turned on his porch lights and peered out, noting a small patch of ice on the sidewalk near his steps.

In their opening statements at the trial, counsel for both sides addressed themselves to a question of improper construction relating to the lack of a gutter and leader to carry off water from the protective roof overhanging defendants' entrance. The trial judge manifested some doubt as to whether the pleadings and pretrial order properly presented this issue but, upon the representation of defendants' counsel that he was not surprised by its insertion into the case, permitted an amendment of the pretrial order to read "improper construction that there was no gutter across the

roof." During the course of the trial, plaintiff called a building contractor who testified as to the standards in the trade regarding the installation of gutters and leaders.

The trial judge charged the jury that there was only one issue in the case with respect to defendants' conduct: whether or not they had been negligent in failing to inspect the sidewalk and remove the ice in the three hours between its formation and the occurrence of the accident. In light of the amendment to the pretrial order and the subsequent testimony of plaintiff's expert, the Appellate Division held that restricting the jury's consideration to the lone issue of constructive notice was error. It referred particularly to the following portion of the charge:

"* * * There has been some talk about leaders and gutters and things of that sort, which is wholly immaterial, because you don't have to have any gutters or leaders on your house if you don't want them. There is nothing that obligates you to do it in any respect. In this particular case we are talking about a little overhang only three or four or five feet wide over the back steps. You will see that in the photographs. And nobody, not even the expert produced on behalf of the plaintiff, says that there should have been a gutter there. And whether there should or should not is entirely beside the point; there is no allegation of any improper construction or anything of that sort. We are only concerned with whether or not this dangerous condition, if there was one, existed for such a length of time that Mr. and Mrs. Maly should have known about it and done something about it. So you don't have to worry about gutters or leaders or anything of that nature."

Admittedly, the trial judge misstated the facts by informing the jury that "there is no allegation of improper construction or anything of that sort." He overlooked the amendment to the pretrial order which specifically incorporated this issue in the case. Defendants contend, however, that the error was harmless, arguing that, in any event, plaintiff's evidence was insufficient to raise a jury question as to improper construction.

Many of defendants' disparaging comments concerning the quality of the expert testimony are justified. It was "fraught with doubt" and "very vague." Conceding this

much, we nevertheless think the builder's testimony created a factual conflict at least deserving of jury determination.

The following statements were made by the expert during his direct and cross examinations:

"Q. Do you know what the proper construction is with reference to a roof of this kind regarding rain or snow dripping down? A. The whole porch-roof area has no gutters and it should have a gutter in order to—
Q. Is that the standard way of constructing the roof? A. Yes.

\* \* \* \* \* \* \* \*

A. It all depends on the area of the roof. This roof, I think, is a little too large for not having a gutter.

\* \* \* \* \* \* \* \*

Q. You are giving us your opinion. I am trying to ask you: Is there any standard in the trade or is it a matter of discretion with the builder? A. No. There is a standard in the trade, and the shed roof in that area there is at least a gutter and a leader.

\* \* \* \* \* \* \* \*

Q. Is that leader and gutter standard construction? A. For an area that large, yes."

Defendants assert the force of the expert testimony was completely vitiated when, after testifying that it was accepted construction practice to place a gutter and leader on roofs of approximately 20 or more square feet in area, the builder admitted he had not measured the dimensions of the particular overhang involved in this case. It is apparent, however, that the canopy projects from, and partially drains, a large porch roof also lacking gutters. Furthermore, there was testimony that the canopy was "close" to 20 square feet, "about four by five."

█ Although the expert testimony was weak and confusing, nevertheless there was sufficient to constitute a question of fact for the jury as to whether there should have been a gutter on the edge of the canopy, and there was no justification for the trial court's charge to the contrary, entirely eliminating the issue from consideration. It was incorrect and prejudicial.

█ It is true that if the "opinion" is so completely lacking in proper foundation as to be worthless, it is not admissible. *Stanley Co. of America v. Hercules Powder Co.,*

16 *N. J.* 295 (1954). But this testimony was not within that classification.

■ The trial judge had the right to comment upon the deficiencies inhering in the expert's opinion, but it was not within his province to negate such evidence completely and, in effect, to withdraw it from the consideration of the jury by concluding such an opinion had never, in fact been voiced.

The Appellate Division determined:

"* * * The expert, a builder of houses and general contractor, said in answer to the trial court's direct question whether there was any standard requiring a gutter for an overhang of the type involved in this case, that there was such a standard, and this roof was a little too large not to have a gutter. The custom of the building trade, he went on to say, was to put a gutter on a roof 20 square feet or more in area, and this canopy was close to that figure.

Thus the factual issue of improper construction was squarely presented at the trial. * * *"

The record warrants such a determination.

The dissenting opinion stated that no landowner is legally obligated to construct a gutter on his building in order to prevent water due to melting ice and snow from accumulating on the sidewalk below, citing *Saco v. Hall,* 1 *N. J.* 377 (1949); *Millar v. United Advertising Corp.,* 131 *N. J. L.* 209 (*E. & A.* 1944); *Zwickl v. Broadway Theatre Co.,* 103 *N. J. L.* 604 (*E. & A.* 1927).

These decisions echo the common-law doctrine that abutting property owners are under no duty to keep the public sidewalk adjoining their premises free of snow and ice, *Sewall v. Fox,* 98 *N. J. L.* 819 (*E. & A.* 1923), and may even divert the natural flow of surface waters so that they discharge onto such sidewalk. *Jessup v. Bamford Bros. Silk Mfg. Co.,* 66 *N. J. L.* 641 (*E. & A.* 1901). It is said these same cases must also be deemed to recognize inferentially the rule that there is no obligation to provide gutters or leaders on the roof of a building to prevent melting snow and rain water from flowing off and coalescing into an accumulation of ice on the sidewalk below. Liability, it is argued, arises

only where the property owner voluntarily undertakes to construct and maintain such a gutter and does so defectively without exercising reasonable care. *Millar v. United Advertising Corp., supra.*

But all of the foregoing adjudications are concerned solely with the landowner's obligation to the public in general, who use the sidewalk adjacent to his edifice in the exercise of a public easement superior to the property owner's title to the land itself on which the sidewalk is constructed. See *Halsey v. Rapid Transit Street Ry. Co.*, 47 *N. J. Eq.* 380 (*Ch.* 1890).

The question of a landowner's obligation to the public, which uses the abutting sidewalk pursuant to its right of public user, is not here involved. The issue centers upon a landlord's obligation to his tenant with respect to the maintenance of a private walk over which the public at large has no easement but which is situated completely within the boundaries of the landlord's premises. The relationship is completely different. Had the plaintiff fallen upon a public sidewalk, the extent of her rights would have been controlled by *MacGregor v. Tinker Realty Co.*, 37 *N. J. Super.* 112 (*App. Div.* 1955).

The accident here occurred upon the private walk at the rear of the house, the use of which was primarily limited to the defendants and to the plaintiff. It was constructed and maintained for their benefit and for those whom they impliedly or expressedly invited to utilize it. A landlord owes a duty of exercising reasonable care to maintain such walks in a reasonably safe condition for the benefit of his tenants and proper invitees. *Hedges v. Housing Authority,* 21 *N. J. Super.* 167 (*App. Div.* 1952). See *Daniels v. Brunton,* 7 *N. J.* 102 (1951); *Rizzi v. Ross,* 117 *N. J. L.* 362 (*E. & A.* 1937); *Peterson v. Zaremba,* 110 *N. J. L.* 529 (*E. & A.* 1933); *Bolitho v. Mintz,* 106 *N. J. L.* 449 (*E. & A.* 1930).

Reasonable care is a relative term and to determine whether it has been observed in any particular situation requires a consideration of all of the surrounding facts and

circumstances. *Terranella v. Union Bldg. & Const. Co.,* 3 *N. J.* 443, 449 (1950).

As part of his general obligation to keep the premises in a reasonably safe condition, a landlord is under a specific duty to exercise reasonable care to keep common passageways within his control free of snow and ice. *Visaggi v. Frank's Bar & Grill, Inc.,* 4 *N. J.* 93 (1950); *Mackin v. Last,* 127 *N. J. L.* 37 (*Sup. Ct.* 1941); *Boyle v. Baldowski,* 117 *N. J. L.* 320 (*Sup. Ct.* 1936); *Rooney v. Siletti,* 96 *N. J. L.* 312 (*Sup. Ct.* 1921).

At least in the case *sub judice,* the defendants' failure to construct and maintain a gutter and leader became a factual element to be taken into consideration by the jury in determining whether the due care required by law had been exercised.

As to the plaintiff's contention that certain isolated portions of the trial judge's charge were improper and prejudicial, we think it obvious that her arguments have no merit. The instructions in question merely illuminated, by way of contrasting examples, the nature and scope of the duty owed by defendants to plaintiff. There were no contradictory statements as to the facts involved or the principles of law applicable. When considered in the whole context of the charge, the remarks complained of were not prejudicial to the plaintiff's rights. Nor is there substance in her contention that the judge below erroneously refused to charge as requested.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—Justice HEHER—1.