77 N.J. Super. 1 (1962)
185 A.2d 232
AUBREY WYATT, PLAINTIFF-RESPONDENT,
v.
THOMAS CURRY AND COCA COLA BOTTLING CO. OF N.Y., INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1962.
Decided November 1, 1962.
*3 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. John Gaffey argued the cause for appellants (Messrs. Gaffey & Webb, attorneys, Mr. Charles V. Webb, Jr. and Mr. Geoffrey Gaulkin, of counsel).
Mr. Stanley W. Greenfield argued the cause for respondent.
The opinion of the court was delivered by FOLEY, J.A.D.
In this negligence case defendants appeal from a jury verdict in favor of the plaintiff.
At about 4 P.M. on May 8, 1959, a clear day, plaintiff, an elderly man who is totally deaf, was engaged in trimming grass on the premises located at 141 E. Eighth Avenue, Roselle, N.J. While so engaged he was struck and severely injured by a truck operated by defendant Curry in pursuance *4 of his business as a wholesale distributor of carbonated beverages, and as a servant of the corporate defendant.
Concededly, the evidence bearing on the focal issues of negligence, contributory negligence and proximate cause was entirely circumstantial.
Russell Smith and his wife Gertrude reside in the dwelling at 141 E. Eighth Avenue, located on the northerly side of the street, three doors from Chestnut Street which intersects to the west. At the northeast corner of E. Eighth and Chestnut there is a residence property which has been partially converted into a delicatessen store operated by John Tylutki. Another residence and a vacant lot separate the Smith and Tylutki properties. Bordering the southerly side of E. Eighth Avenue and across from the Smith property is an athletic field (Simpson Field) in which children are permitted to play after school hours.
At the time of the accident, plaintiff was working on a grass area which lay between the curb and the sidewalk. This area was planted with several separated hedge bushes varying in height from two to four or five feet. The bush under which plaintiff was working was approximately 18 inches inside the curb line.
Plaintiff testified on pretrial depositions and at the trial itself, both times being examined by written questions because of his total deafness. While there were some slight variations in the details of the testimony he gave on these two occasions, it was clear that he claimed to have been facing the Smith dwelling, in a kneeling or bent over position when he was struck; that his feet were either on the curbing or on the grass adjacent to the bush under which he was working; and that whether standing or kneeling in this position his buttocks may have protruded beyond the curb line.
Curry's truck was of the type commonly used for the distribution of carbonated beverages, with an open shelf on each side on which cases could be stacked. On direct examination Curry testified that the body of the truck does not extend beyond the wheels, but he said there was a "two inch *5 pipe" which was above the right rear wheel, four feet from "the ground" and extended about two or three inches outside the wheel.
He testified further that he was proceeding westerly on E. Eighth Avenue at a speed of five to ten miles per hour at a slight angle toward the curb, preparatory to making a delivery stop at Tylutki's delicatessen; there were no vehicles parked on the street and nothing obstructed his vision; children were playing on Simpson Field; he did not see the plaintiff as he approached or passed the point at which the latter claims to have been working; he first became aware of his presence when he heard a "thud" on the right side of his truck, and he brought the truck to a stop immediately. He said he alighted, went around the front of the truck, and then saw the plaintiff lying between the curb and the right rear wheel, his left shoulder "touching" the wheel.
Curry identified on a photograph in evidence a skid mark running to the inside of the left dual rear wheels and about eight feet from the northerly curb line. He said also that after the accident he saw at the curb a broken lawn mower handle and that the mower to which it had been attached lay between two of the hedge bushes.
On cross-examination Curry testified that the body of the truck "sticks out" about "three inches out beyond the front fender," that the truck was six, seven or eight feet wide, and that after the accident the right rear outside tire was about three feet from the curb.
There were no eyewitnesses to the accident. Gertrude Smith testified that while in her living room reading the newspaper she was attracted by a noise which sounded as if "something hit" the house. Belle M. Lester, who resides between the Smith house and the Tylutki delicatessen, was on her porch watering plants when she heard a "tremendous noise  screeching and thud." Sergeant Raymond Breneiser of the Roselle Police, who was summoned to the accident scene, testified that the skid mark mentioned above was eight feet long. He said also that the body of the truck behind *6 the cab overhung the front wheel "a foot, foot-and-a-half" and that the plaintiff was lying near the right rear wheels.
Defendants' first point is that the court erred in denying their motions for an involuntary dismissal made at the close of plaintiff's case and at the conclusion of the entire case. The broad approach taken is that plaintiff proved no more than the mere happening of an accident. It is, of course, axiomatic that the mere showing of an incident causing the injury sued upon is not alone sufficient to authorize the finding of an incident of negligence. Negligence is a fact which must be shown and which will not be presumed. The burden of proving the charge of negligence is upon the plaintiff and must be sustained by proof of circumstances from which defendant's want of due care is a legitimate inference. Long v. Landy, 35 N.J. 44, 54 (1961). A corollary of these established principles is that a court may not weigh the evidence on a motion for involuntary dismissal but must accept as true all of the evidence which supports the party against whom the motion is made and give him the benefit of all legitimate inferences which may be drawn therefrom in his favor. Visaggi v. Frank's Bar and Grill, Inc., 4 N.J. 93, 98 (1950).
The thesis of defendants is that since plaintiff "in effect proved only that he was working on or near the curb and that defendant was driving on the street and that neither saw each other," there was a total hiatus "in the events as to how the plaintiff came in contact with the truck." Thus the jury should not have been permitted to infer negligence. The fallacy of the premise is obvious. It overlooks completely that in the ordinary course of human events a vehicle being driven on a residential street in broad daylight, and in circumstances where the driver's view is unobstructed by traffic or parked vehicles, does not collide with persons working near, or even on, the travelled highway.
The law is clear that circumstantial evidence as a basis for deductive reasoning in the determination of civil cases is defined as a mere preponderance of probabilities, and *7 therefore a sufficient basis for decision. Jackson v. D.L. & W.R.R. Co., 111 N.J.L. 487, 491 (E. & A. 1933). All that is required is that the circumstances be so strong that a jury might properly, on the grounds of probability rather than certainty, exclude the inferences favorable to the person sought to be charged. Id. When a fact itself cannot be demonstrated, that which comes nearest to proof of it is proof of circumstances necessarily or usually attending it. Id.
In the frame of reference here presented it was plainly for the jury to deduce from all the circumstances how this unusual accident probably occurred and, having done so, to arrive at their decision under the guidance of the court's charge respecting the mutual legal obligations of the parties. The trial judge in deciding defendants' motions commented:
"* * * the jury may draw the inference legitimately that the plaintiff was working in the curb or in the gutter and that the defendant did not make a reasonable observation of his presence in that position; or the jury may draw the legitimate inference from the evidence that as the truck was passing and after the driver got beyond the location of the plaintiff, that he then backed out into the truck and was struck by the right side of the truck."
We agree with these observations. But we add that there were other conclusions reasonably to be reached by a jury which would support a determination that the defendant driver was solely responsible for the accident in the proximate causality sense. For example, it was open to the jury to infer from Curry's own testimony to the effect that he was driving close to, and diagonally toward, the curb even though he was still a considerable distance from his destination, that his attention was temporarily diverted from his driving by the activities in Simpson Field. Or, having in mind the extraordinarily slow speed at which Curry was driving and the course he was taking, a permissible inference arose that he was drifting along as he turned his attention to details of the delivery he was about to make.
*8 In all events, we are satisfied that the entire proofs presented a classic picture of circumstantial evidence requiring determination by the jury of the issues of negligence, contributory negligence and causation.
Next, defendants argue that the court committed error in its refusal to charge as requested. At the conclusion of the trial defendants submitted to the court the following request:
"I charge you that if after a consideration of all the evidence you find that the defendant Curry was guilty of negligence and also that the plaintiff, Mr. Wyatt, was guilty of negligence, however slight, which proximately contributed to the happening of the alleged accident then your verdict must be in favor of the defendants."
In their brief, defendants concede that the court "correctly charged the standard of care [required of defendants], proximate cause, and the plaintiff's burden of proof," and also "the court did note that contributory negligence, if it did contribute to the occurrence, operates as a bar to recovery." However, defendants go on to say that the charge on contributory negligence "was stated in the abstract, as a kind of parallel to the instruction that negligence if proved permits recovery." The argument proceeds that "each proposition," i.e., negligence and contributory negligence, "is incomplete, and thus inaccurate, without the other; in the absence of an instruction by the court as to how these two parallel rules operate when both parties are negligent * * *."
We know of no case which requires the court to make specific reference to the legal effect of a finding of joint negligence. The test by which the adequacy of instructions is assessed where a finding of culpable negligence on the part of both parties reasonably might be made, does not differ from the standard generally applied on review of instructions. The test is simply whether a reading of the charge as a whole satisfies the reviewing court that ordinary men and jurors would not fail to understand the instructions as given nor be confused or misled by reason of them. Ristan v. Frantzen, 14 N.J. 455, 461 (1954). See also Kargman v. Carlo, 85 *9 N.J.L. 632, 638 (E. & A. 1914); Middleton v. Public Service Co-ordinated Transport, 131 N.J.L. 322, 324-325 (E. & A. 1944); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107-108 (1950).
With respect to the defendants' contention that the end effect of the composite of the parties' conflicting proofs on the issues of negligence, contributory negligence and proximate cause, should be coalesced in the charge when the negligence of both parties is inferable, it is significant that in Ristan the court observed that the touchstone of a proper charge is that the various parts of it are correct expositions of the law required by the issues as framed and are consistent with one another. 14 N.J., at p. 461, 102 A.2d, at p. 617. Thus, while defendants' request to charge represents a faultless statement of the law which might well have been given by the court in the circumstances, the painstaking instructions of the trial judge in which he defined negligence, contributory negligence, and the relation of each to the issues raised, in our judgment fully served the criteria set out in Ristan v. Frantzen, supra, and the cases cited therein.
Tangentially to the argument that the failure to instruct as requested was error, defendants urge that confusion prejudicial to them was engendered by the court's instructions that:
"If you are satisfied from your consideration, comparison and evaluation of all of the evidence that the plaintiff has sustained his burden by the greater weight or preponderance of the evidence and that the scales are balanced in his favor as against the defendant or defendants, then you are saying that he has sustained his burden and your verdict would be in his favor and against the defendant or defendants."
and that:
"If you determine from all of the evidence in this case that the plaintiff has sustained his burden of proving the negligence of the defendant by the greater weight or preponderance of the evidence and that under such weight of the evidence the happening of the *10 accident was the natural and proximate result of that negligence, then you have arrived at a point where your verdict would be in favor of the plaintiff and then your deliberations will not terminate and you have to go further and assess damages."
Defendants maintain that these instructions are palpably and fatally erroneous in that both exclude from the jury's determination the effect of contributory negligence upon their decision. Analyzed in isolation, both instructions were palpably erroneous for the reason defendant asserts; but, as we have already pointed out, neither the sufficiency nor the correctness of particular portions of the charge are assayed in vacuo. Rather, they must be read in the context of the entire charge. So viewed against the background of instructions given on the issue of contributory negligence, the conclusion is irresistible that the jury was intelligently informed that if the plaintiff negligently contributed to the happening of the accident he could not recover. A party to a cause is not entitled to have the jury charged in words of his own choosing and, when the charge as a whole clearly and correctly states the principles of law pertinent to the issues in the case, there is no error in this respect. Batts v. Joseph Newman, Inc., 3 N.J. 503, 511 (1950). For these reasons we conclude that neither the refusal to charge as requested, nor the criticized portions of the charge as given, constituted reversible error.
Finally, defendants argue that plaintiff's attorney's mention in his summation of the words "insurance companies" intruded upon their fundamental right to a fair and impartial trial and that the court erred in failing to grant a mistrial on defendants' motion. The genesis of this argument is this: In his closing remarks the attorney while discussing damages, referred to the life expectancy table admitted in evidence under R.R. 4:45A, and said:
"And how long is he going to live? Only the good Lord knows that. But under our Rule we have what is called a life expectancy table and that's arrived at by thousands, perhaps millions of statistics *11 being used by the insurance companies, and they arrive at averages, and from these tables you heard that a man at his present age, on an average, will live 12.34 years." (Emphasis added.)
We are not impressed by defendants' vehement assertion that this reference to insurance companies was of "devastating effect" or that "it implied to the layman that the use of the table [was] permitted only because the real party in interest in the case [was] an insurance company and that the company should be held to its own expectancy tables." Our immediate reaction to this contention is that if the jury was concerned with the financial ability of defendants to respond to a judgment, rather than their legal liability to so respond, the identity and supposed wealth of the corporate defendant, in all likelihood, would have eliminated this factor from their determination. More important, however, is the fact that the disposition of motions for mistrial rest within the sound discretion of the trial judge who must decide in the special circumstances of the case whether a party thereto is likely to have suffered prejudice by the mention of insurance. Runnacles v. Doddrell, 59 N.J. Super. 363, 368-369 (App. Div. 1960). We find that the trial judge properly denied the motion for a mistrial.
Affirmed.